George W. Riggs et al., Respondents, *v.* James Pursell et al., Michael G. Grosz et al., Appellants.

The rules applicable to judgments as estoppels do not apply to their full extent to orders made on motions.

Such an order is not conclusive, as an adjudication, as to a fact which might have been, but which was not actually litigated.

The motion may also be renewed upon a different state of facts, or by supplying defects in proof.

The rule, requiring leave to be obtained before renewing a motion, is one of practice merely; it does not affect the power of the court to reconsider its decision on a motion, upon additional facts presented on a subsequent motion, without such consent having been preliminarily obtained.

The affirmance of an order, by this court, does not add to its effect, or preclude a renewal of the motion in the discretion of the court below, upon different or additional facts.

Where, on refusal of purchasers at a foreclosure sale to complete their purchase, they alleging objections to the title, the court overruled the

objections and ordered the purchasers to complete the purchase; if they failed to do so, that the premises be re-sold, and that any deficiency arising be paid by them. *Held,* that the re-sale should have been under the same terms as those upon which the first sale was made; and, where the terms of the re-sale differed materially, that an order restraining plaintiffs from collecting from the former purchasers a deficiency arising on the second sale, was properly granted.

One objection to the title, made by the purchasers at the first sale, was that by an agreement between the former owners of the premises and the owners of other lands, certain restrictions were imposed as to the use of the premises, which were an incumbrance thereon, and were not referred to in the terms of sale. The order requiring the purchasers to complete the purchase was affirmed by this court, upon the ground that no proof was given, or allegation made, that the restrictions affected the value of the premises, and that this could not be assumed without proof. (66 N. Y., 193.) These restrictions were referred to in the terms on the re-sale, and the same was made subject thereto. The mortgaged interest in the premises was sold for less than on the first sale, and an order requiring said purchasers to pay the deficiency was granted. On motion by said purchasers to restrain plaintiffs from collecting, or taking any proceedings to collect, such deficiency, the moving affidavits showed that said restrictions did seriously and injuriously affect the value of the premises. *Held,* that the court was not precluded by the former decision from considering the additional facts; that, it appearing thereby that the restrictions constituted a material defect in the title, a re-sale subject to that defect did not constitute a proper measure of damages for not completing a purchase made without notice of it; and that the purchasers were not liable for the deficiency.

Also, *held,* that it was competent for the court to direct that said purchasers be relieved from their purchase, and from paying any deficiency.

(Argued June 18, 1878; decided September 17, 1878.)

APPEAL by Michael Grosz and Frederick H. Grosz, purchasers at a foreclosure sale herein, from an order of the General Term of the Supreme Court, in the first judicial department, reversing an order of Special Term, which enjoined and restrained the plaintiffs from enforcing against said purchasers an order requiring them to complete their purchase, or pay any deficiency arising on re-sale, and certain other orders referred to therein, or from taking any proceedings thereunder.

The order of Special Term also adjudged that the orders for deficiency are and were satisfied by a purchase of the

premises by plaintiffs on a re-sale; that said purchasers be released from completing their purchase, and from paying the balance of their bid.

The judgment of foreclosure under which the sale was made was recovered upon a mortgage of a leasehold interest for the term of twenty-one years, in certain property situated on the southeasterly corner of Broadway and Twenty-second street, in the city of New York created by a lease made on the 24th day of March, 1868; the lease contained covenants for two subsequent renewals of like terms, of twenty-one years each. Before the lease was given, and on the 12th of May, 1849, an agreement had been made by and between Philip Kearney and Alexander Macomb and wife, the owners of this and other property on Twenty-second street, creating the obligation upon each, that in building upon their property the buildings erected should be set back seven feet and six inches from the line of Twenty-second street, for the purpose of creating a court-yard between them and the line of the street. The agreement also restricted the parties from erecting or carrying on upon their respective premises "any slaughter-house, smith's shop, furnace, steam-engine, brass foundry, nail or other factory, or any manufactory of gunpowder, glue, varnish, vitriol, ink or turpentine, or for the tanning, dressing, or preparing skins, hides or leather, or any brewery, distillery, or any other noxious or dangerous trade or business."

No reference was made in the terms of sale to this agreement. The interest in the premises covered by the mortgage was bid off by the purchasers above-named for $42,000. They refusing to complete the purchase, the plaintiffs applied for an order directing them to pay their bid and complete the sale, and another application was at the same time heard, in which the said purchasers asked to be relieved from their bid and their written contract to pay for and take the property. This application was based upon the ground, among others, that the estate was subject to the agreement for setting the buildings upon Twenty-second street back seven and

one-half feet from the street line; and to the restraints imposed by the agreement as to the kinds of business which might be carried on upon the property. The application of the plaintiffs was granted, and that of the purchasers denied, the court ordering that they complete their purchase, and if they failed so to do that the premises be re-sold, and that they pay any deficiency arising on such re-sale.

An appeal from the order was taken by the purchasers to the General Term, where it was affirmed, and an appeal to this court had the same result. (See *Riggs* v. *Pursell*, 66 N. Y., 193.) A re-sale was had, and the interest mortgaged was bid in by plaintiffs for $1,000.

The further material facts are set forth in the opinion.

*Elbridge T. Gerry* and *John K. Porter*, for appellants. The change of terms and description of the property, and its preconcerted purchase by plaintiffs at the deficiency sale was fraudulent and oppressive. (*Guilotte* v. *Jennings*, 4 La. An., 242; *Mittenburger* v. *Hill*, 17 id., 52; *Jennings* v. *Hodges*, 16 id., 321; *Crooks* v. *Moore*, 1 Sandf., 303; *Adams* v. *McMillan*, 7 Porter [Ala.], 88; *James* v. *R. R. Co.*, 6 Wal., 752, 755.) The conduct of the deficiency sale by plaintiffs, and their purchase thereat, was illegal and it was void. (*Lewis* v. *Greider*, 51 N. Y., 231–236; *Moore* v. *Moore*, 5 id., 261; *Hamilton* v. *McPherson*, 28 id., 76; Hill on Trustees, 535–536; *Dodson* v. *Racey*, 3 Sand. Ch., 68; 8 N. Y., 316; *Van Epps* v. *Van Epps*, 9 Paige, 241; 1 Story's Eq. Jur., § 222; *Horsey* v. *Hough*, 38 Md., 130; *Riggs* v. *Pursell*, 66 N. Y., 203; *Coffey* v. *Coffey*, 16 Ill., 141–144; *Marsh* v. *Ridgeway*, 18 Abb. Pr., 262; *Hough* v. *Horsey*, 36 Md., 181; Story on Sales [2d ed.], § 463; *Gray* v. *Veirs*, 33 Md., 22; *Glenn* v. *Clapp*, 11 G. & J., 1; *Cohen* v. *Wagner*, 6 Gill, 251; *Johnson* v. *Dorsey*, 7 id., 269; *Hintz* v. *Stingel*, 1 Md. Ch. Dec., 283; *Kauffman* v. *Walker*, 9 Md., 229; *Goldsborough* v. *Ringgold*, 1 Md. Ch. Dec., 239; *Murdock's Case*, 2 Bland, 461; *Turner* v. *Bouchell*, 3 H. & J., 99; *Bolgiano* v. *Cook*, 19 Md., 375; *Hubbard* v. *Jarrell*, 23 id., 661.)

*Jno. E. Parsons*, for respondents.  The order directing a re-sale was *res adjudicata* upon the parties, and the purchasers could not by motion or action reopen the matter it decided.  (*Embury* v. *Conner*, 3 N. Y. [3 Conn.], 511; *Voorhees* v. *Bank U. S.*, 10 Pet., 449; *Etheridge* v. *Osborn*, 12 Wend., 399; *Suydam* v. *Williamson*, 6 Wall., 723; *Malloney* v. *Horan*, 49 N. Y., 111; *Demarest* v. *Darg*, 32 id., 281.)  The referee had a right to state on the re-sale that it was made subject to the provisions of the Macomb agreement.  (*Marsh* v. *Ridgway*, 18 Abb., 262.)  If the appellants were dissatisfied with the second sale, they should have applied for a re-sale, offering an advanced bid.  (*Brown* v. *Frost*, 10 Paige, 243; *Collier* v. *Whipple*, 13 Wend., 224; *Whitbeck* v. *Rowe*, 25 How., 403 ; *Nicholl* v. *Nicholl*, 8 Paige, 349; *Hotchkiss* v. *Clifton Air Cure*, 4 Keyes, 170; *McDonald* v. *Neilson*, 2 Cow., 139.)

Rapallo, J.  On the refusal of the appellants to complete their purchase at the first sale, the court overruled their objections to the title and denied their application to be relieved from their purchase and ordered that they complete their purchase and that if they failed to do so the premises be resold by the referee in accordance with the practice of the court, and that the deficiency arising on such re-sale be paid by the appellants.  That order was affirmed at General Term and in this court.  (*Riggs* v. *Pursell*, 66 N. Y., 193.)

The re-sale under that order should clearly have been under the same terms of sale as those upon which the first sale was made.  It was an express condition of the original terms of sale that if in consequence of the failure of the purchasers to complete their purchase a re-sale should be had, it should be under the same terms of sale, and such is also the proper practice.  A re-sale under different terms would not afford a just measure of the liability of a defaulting purchaser.  The terms of sale under which the re-sale was had differed materially from those used at the first sale.  They

incorporated, by reference, the notice of the second sale, which stated that it was to be made subject to the restrictions in the Kearney and Macomb agreement, not to build within seven feet six inches of the southerly line of Twenty-second street, and also against any furnace or steam-engine being placed on the premises. None of these restrictions were contained in the lease, nor had they been referred to in the original terms of sale. The auctioneer's fees, which by the first terms of sale were fixed at ten dollars for each parcel, to be paid by the purchaser, were in the second raised to twenty-five dollars per parcel, there being five lots of land. Reference was also made to an adjudication upon the court-yard agreement.

To the objection of variance in respect to the restrictions in the Kearney and Macomb agreement, it is answered that those restrictions were the same which had been the ground of the appellants' objections to the title on the first sale, which objections had been on the former motion overruled in the Supreme Court and in this court, and that the reference to them in the second terms of sale did no injury, as they constituted no valid objection to the title. To the other variances no answer is made.

If no facts appeared on this motion other than those which appeared upon the former one, there would be plausibility at least in the answer as to the restrictions; but on reference to the opinion of this court on the former motion, it will be seen that there was then no proof or even allegation that these restrictions diminished the value of the premises to any extent whatever. That the agreement appeared to have been made to enhance the value of all the lots on the street, and not to impose a burden upon the premises in question — and that while the agreement might in one sense be regarded as an incumbrance, it could not be assumed, without proof, that it injuriously affected the value of the premises to any extent whatever. And the decision is in express terms placed upon the ground that there was no proof that the agreement in any way diminished the value

of the premises. That it was manifest that the purchasers would have bid the same if they had known of the agreement, and it therefore was an immaterial defect in the title which the court should disregard.

It is clear that had it appeared on that motion that this defect, instead of being immaterial, was one which seriously injured the premises in value, the order requiring the purchasers to complete their purchase would not have been affirmed in this court. The re-sale directed by that order should have been made on the same theory as that upon which the order was affirmed, viz., that the defect was immaterial and not available to any purchaser as a ground of objection to the title, and therefore need not be mentioned in the terms of sale ; or if the respondents preferred to mention it they should at least be prepared to vindicate that alteration of the terms, by showing that it did not prejudice the sale, and that the premises could be sold as advantageously under the altered terms of sale as under those on which the appellants had made their bid. They cannot be admitted to say that the defect is immaterial, for the purpose of holding the appellants to their bid, at a sale at which notice of the defect was not given, and that it is material for the purpose of justifying notice of the defect being given on a re-sale, on the ground that such notice was necessary to render the sale binding upon a second purchaser. If the defect is material the appellants should not be held to their first bid. Neither should the amount of their liability for non-completion be measured by the difference between the bids at a sale with the defect undisclosed, and at a re-sale with the defect disclosed.

It is asserted in the respondents' papers that the appellants at the time of their bid had notice of these restrictions and that on that ground this court held them bound to complete their purchase. In the opinion delivered on the first appeal it is stated that there was strong proof that the appellants knew of the court-yard agreement ; but no such point was decided by the court, and the decision was distinctly and

explicitly placed upon the sole ground that there was no proof that the agreement in any way diminished the value of the premises. There was no direct proof of knowledge of the agreement and the main circumstance tending to show such knowledge was that the buildings did not cover the space reserved for court-yards, and that the appellants knew their location and manner of construction. But on the present motion, affidavits of both appellants were read, explicitly and positively denying any knowledge of the restrictions at the time of the first sale, and also an affidavit of their counsel stating that he discovered them in investigating the title for the appellants after the sale. In the face of these denials the evidence is not sufficient to justify the court in finding that the appellants had notice of the restrictions, and their liability rests wholly on the ground of the alleged immateriality of the defect.

The papers now before us contain, for the first time, proofs bearing upon that question.. Affidavits of competent persons, in addition to those of the appellants, are produced, showing that the court-yard agreement diminishes the value of the premises to the extent of several thousand dollars, and also that the restrictions against any steam-engine or furnace are injurious. To these the affidavits on the part of the respondents furnish only a qualified answer, which is that the court-yard agreement does not diminish the value of the premises if they are to be used for dwelling-houses, and that it does not diminish their value as the buildings now stand. This is a very evasive answer, for the premises are not used for dwelling-houses but for a theatre, and it is very obvious that as the buildings now on the premises do not cover the land reserved, the existence of the agreement has no immediate effect upon the value so long as the buildings stand as they now are. The injury would only be developed in case it should become desirable to cover the reserved space. For the purposes of a dwelling-house, the loss of space would be more than compensated by the observance of the same restrictions by the owners of all the other lots on the street, but

for business purposes the evidence establishes that the space is more valuable for building than for a court-yard, and these premises are now devoted to business purposes.

We must conclude upon the papers now before us, which in this respect differ from those on the former appeal, that the restrictions in the Kearney and Macomb agreement constituted a material, and not an immaterial, defect in the title, and that a re-sale subject to that defect does not furnish a proper measure of damages for not completing a purchase made without notice of it. The respondents however contend that the decision of the former motion is an adjudication which estops the appellants from raising this question, or claiming that those restrictions constituted any substantial objection, and he refers to the authorities which establish that a judgment concludes the parties not only as to every issue which was raised, but as to every issue which might have been raised, in the action, and claims the same effect for the order in the former motion.

We do not understand the rules applicable to judgments as estoppels to be applicable to their full extent to orders made on motions. Prior to the decision in *Dwight* v. *St. John* (25 N. Y., 203) it was considered that a decision made upon a motion had no force as a former adjudication. (*Simson* v. *Hart*, 14 J. R., 63–76; *Van Rensselaer* v. *Sheriff of Albany*, 1 Cow., 501, 512; *Dickenson* v. *Gilliland*, id., 481, 495; *Smith* v. *Spalding*, 3 Rob., 615; *White* v. *Munroe*, 33 Barb., 650.) In *Dwight* v. *St. John* in view of the provisions of the Code giving the right of appeal from orders, a limited effect was given to them as adjudications, binding in case of a subsequent controversy, and it was there held that in the case of an order affecting a substantial right, and appealable, where a full hearing had been had before a referee on a controverted question of fact, the decision of a point actually litigated before the referee and upon the motion was an adjudication binding upon the parties and conclusive to that extent. An examination of the case shows that the effect of an order as an adjudication was thus expressly

limited, and that it was not held in that case that the order was conclusive as to a fact which might have been litigated, but only as to one which actually had been litigated and on which there had been a full hearing. Nor was the familiar right of a party to renew a motion upon a different state of facts, or by supplying defects in proof, in any manner questioned or impaired by that decision. *In re Livingston* (34 N. Y., 555, 575) the application which was reheard at Special Term was made upon petition and was held to be a special proceeding in equity, not subject to the rules governing motions. Where additional facts are presented or defects in proof supplied, it is quite usual to grant leave to renew a motion which has been denied or to rehear one which has been granted. (*Smith* v. *Spalding*, 3 Rob., 615; *Belmont* v. *Erie R. Co.*, 52 Barb., 637 and authorities cited.) And in *White* v. *Munroe* (33 Barb., 650) the power of the court to reconsider its decision on the same state of facts is maintained, though such power is rarely exercised. The rule requiring leave to be obtained before renewing a motion is one of practice merely, to avoid confusion and abuses, but does not affect the power of the court to reconsider its decision on a motion, upon additional facts. In this respect such decisions and orders differ essentially from judgments in actions or special proceedings.

In the present case the question whether as matter of fact the restrictions in the Kearney and Macomb agreement diminished the value of the premises was not litigated on the original motion. No proof whatever was given upon the point by either party and all that this court decided was that in the absence of any proof, or even allegation, to that effect, it could not be assumed that such covenants, evidently made for the benefit of all the lots on the street, injuriously affected the value of the one in question to any extent whatever. This decision clearly left it open to the appellants, by supplying the proof on this point, to renew their motion to be discharged from their purchase. In the papers on the present motion the counsel by whom the original motion was made

explains the omission by stating in his affidavit that although he was aware when he discovered the existence of the court-yard agreement that it diminished the value of the premises to the extent of several thousand dollars, it did not then nor in the subsequent proceedings occur to either him or the counsel whom he consulted, that it was material or necessary to aver or state that fact because they considered that the existence of a court-yard in front of the premises without the right to build thereon was an incumbrance in law, rendering the averment or proof of special damages wholly unnecessary, and hence he did not advise his clients to aver or prove the fact. In the Supreme Court this defect in the proof was not noticed nor was the decision rendered on any such ground. At Special Term the order was made on the ground as appears from the opinion of Brady, J., that the purchasers at the sale bought only the right, title and interest of the lessee and were bound to ascertain the extent of such right by investigation and inquiry, and that they took at their peril when they omitted to exact the necessary information. This order was affirmed at the General Term under the mistaken impression, as appears from the opinion of Davis, P. J., that the judgment of this court in the case of *Clark* v. *New York Life Insurance Company* held that the court-yard agreement did not apply to any part of the premises and that there was nothing to prevent the purchasers from building to the exterior line of the lease-hold property, and the objection must therefore fail. But the learned judge says that there would be a serious question on that point were it not for that decision.

It was not until the case reached this court that the question whether the covenant injured the value of the premises was mooted, and then for the first time the absence of proof on that point was found to be material. Under such circumstances the appellants cannot be deemed concluded as to that.

We think it clear that upon the facts as they now appear the appellants are not liable for the deficiency arising on the re-sale and that the order of the General Term must be reversed and the order at Special Term affirmed in so far as

it restrains the collection of that deficiency. The order at Special Term however goes further, and declares that the orders against appellants for such deficiency are satisfied by the purchase of the premises by the respondents at the re-sale. We do not see on what principle that part of the order can be sustained, but this is a merely formal matter, for the order proceeds to direct that the appellants be relieved from completing their purchase at the sale of July 12, 1875, and from paying the residue of the purchase-money and from paying any deficiency or expenses which may arise on any subsequent sale. This portion of the order, if sustained, effectually relieves the appellants from further liability. We think that it was competent for the court below to grant this relief upon the additional facts presented on the present motion. The more regular mode of proceeding would have been, after the decision of this court, to apply to the court below for leave to renew the motion to be discharged from their purchase on supplying the proofs which this court held to be deficient. The affirmance of the order by this court did not add to its effect, or preclude a renewal of the motion on different facts, if the court below should see fit to permit such renewal. By hearing the motion and granting the relief the court did in fact give such permission and its order is not vitiated by the circumstance that the permission was not separately or preliminarily obtained. The court might if it had seen fit have insisted upon that preliminary, but it had the power to dispense with it and entertain and dispose of the whole matter in one order, and that course is not error for which its order should be reversed on appeal if right upon the merits. The case presents hardships upon both sides, but these arise from the nature and condition of the property and not from any default or misconduct on the part of the appellants. On the facts now disclosed they had the right to object to the title. Conceding that they were bound to take notice of the covenants in the lease, they were still entitled to demand a conveyance of all the leasehold interest which the lease purported to create, free from any incum-

brance or condition not contained in the lease and of which notice was not given them, which might injuriously affect the value of the premises offered for sale. Any other rule would render it unsafe for any person to bid at a judicial sale, and such sales would necessarily result in a wanton sacrifice of the property. Having this right to object, they should not for so doing be visited with the loss resulting from the changed condition of the property which has occurred during the time consumed in the efforts of the respondents to compel them to accept the title. The case is not one in which compensation for the defect will do justice to the purchasers. The respondents who are the mortgagees have bought in the property at a nominal sum and it may be that it is of little or no value, but the facts are not such as to render the appellants liable for this loss.

The order of the General Term should be reversed and that of the Special Term affirmed, except as to that portion of the order which declares the sum decreed against the appellants for deficiency satisfied, and without costs to either party, in this court or the court below.

All concur, except MILLER and EARL, JJ., absent.

Ordered accordingly.