BAECHT v. HEVESY et al.

(Supreme Court, Appellate Division, First Department. November 23, 1906.)

1. MORTGAGES—FORECLOSURE SALE—FAILURE TO COMPLY WITH BID—LIS PENDENS.

Since lis pendens, by itself, does not constitute a cloud upon title, and does not, of itself, justify the release of a bidder at a foreclosure sale, his right to release must depend upon the validity of the claim represented by the lis pendens.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, §§ 1521, 1558.]

2. SAME—GROUND FOR REFUSAL.

Where, at the time of the execution of a deed the land was in possession of one claiming adversely, the deed being void under the express provisions of Laws 1896, p. 603, c. 547, § 225, the grantee had no such claim against the person in possession under a good record title as to make lis pendens thereof a ground for the refusal of a purchaser of the land at foreclosure sale to complete his purchase.

3. VENDOR AND PURCHASER—BONA FIDE PURCHASERS—FAILURE TO RECORD DEED.

Under Laws 1896, p. 607, c. 547, § 241, making unrecorded conveyances void as against subsequent bona fide purchasers, where a conveyance between a remote grantor and his grantee was unrecorded, and a subsequent bona fide grantee took a quitclaim deed from the remote grantor and recorded it, her title could not be assailed by one claiming adversely under a prior, but unrecorded, conveyance from the remote grantor.

4. SAME—NOTICE—EVIDENCE.

Where a mortgagee purchased land at foreclosure sale and afterwards took a quitclaim deed from her remote grantor to complete a chain of title, the fact that she had made one a party defendant in the foreclosure action who claimed an interest in the land, not knowing that he claimed superior title, did not show that she was not a bona fide purchaser.

5. SAME—DEFECT IN VENDOR'S TITLE—BURDEN OF PROOF.

A purchaser, refusing to take the title by reason of an alleged defect in the vendor's title, must point out and prove the defect.

6. MORTGAGES—FORECLOSURE SALE—FAILURE TO COMPLY WITH BID—LIABILITY OF BIDDER ON RESALE ON DIFFERENT TERMS.

A bidder at a foreclosure sale, who unwarrantably refused to complete the purchase, could not be held for the difference between his bid and the lesser amount for which the land was sold, where the resale was made on less favorable terms than the first sale.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 35, Mortgages, § 1523.]

Laughlin, J., dissenting.

Appeal from Special Term.

Action by Caroline Baecht against Louis Hevesy and others. From an order granting the motion of Julius Lewine to be relieved from his bid and for the return of his deposit made at a foreclosure sale, plaintiff appeals. Modified and affirmed.

Argued before O'BRIEN, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

E. J. Myers, for appellant.
Morris Meyers, for respondents.

SCOTT, J. This is an action to foreclose a mortgage upon two lots of land, described and known as lots Nos. 170 and 171 in the map of Washingtonville, in that portion of the city of New York now known as the borough of the Bronx, and formerly constituting a portion of Westchester county. The mortgage foreclosed was the subject of a former foreclosure action in the year 1890, as the result of which the plaintiff became the purchaser of the property and received a deed from the referee and went into possession. In that action one Louis Hevesy, one-time record owner of the property, was made defendant, and, upon proof being furnished that it was impossible to obtain information as to his whereabouts, an order was made dispensing with the service of the summons upon him. Recently the plaintiff sought to

sell the property, and it was suggested, as an objection to her title, that it was possible that Hevesy might have been dead when the foreclosure action was begun, and that, if so, the decree would not have cut off the equities of his widow, heirs at law, devisees, or other successors in interest. Thereupon the present action was begun to cure this suggested defect. Upon the sale, on March 28, 1906, the respondent became the purchaser at a price apparently somewhat in excess of the value of the property. By the terms of sale the title was to have been passed on April 28, 1906, but was adjourned from time to time, at the request of the purchaser, until May 28, 1906, when the purchaser definitely refused to accept the title and demanded the return of his deposit, with interest and the expenses incurred by him. The present motion followed upon the refusal of that demand. The basis of the purchaser's refusal was that one Frank Fritsch had asserted a claim to ownership of the property and had commenced an action to establish that claim, having filed a lis pendens upon May 9th.

It is well settled that a lis pendens, by itself, does not constitute a cloud or incumbrance upon a title, and does not, of itself, furnish any ground in reason why a purchaser should not be compelled to complete his purchase. Grace v. Bowden, 10 App. Div. 541, 42 N. Y. Supp. 60. It becomes necessary, therefore, to inquire as to the nature and apparent validity of the claim represented by the lis pendens. It appears that in 1854 one Rose Marini acquired the lots in question, together with two others, known as Nos. 149 and 150, by a deed from one Frederick Grote. This deed was duly recorded, but no deed appears of record from Rose Marini (except the quitclaim deed hereinafter mentioned). It is said, however, and this does not appear to be disputed, that she executed a deed of lots Nos. 149 and 150 to Rafael Maretzek, and a deed of Nos. 170 and 171, involved in this action, to Adylly Porges, neither of which deeds was recorded. Adylly Porges in 1869 conveyed the lots affected by this action to one Bissinger, and thence by various conveyances the title of the property came to one Louis Hevesy. One of the owners had in the meantime executed a mortgage upon the property, which by various assignments came to plaintiff's husband, and then to her. All the conveyances, mortgages, and assignments, from and including the deed from Porges to Bissinger, were duly recorded, so that plaintiff's record title when she became the owner of the property in 1890, under the sale in the former foreclosure action, was complete and perfect, except that there was no deed on record from Rosa Marini to Adylly Porges. In 1891 Rosa Marini, then known as Rosa Herzfelder, executed and delivered to plaintiff a quitclaim deed of the premises, with habendum in fee, reciting the former conveyance to Adylly Porges, and releasing and quitclaiming to plaintiff all the title or interest, if any, that she, the said grantor, ever had or might then have in said premises. It appears that plaintiff has been in undisputed possession of the premises since her purchase in 1890, and that her husband paid full value for the mortgage upon the property upon its assignment to him. Up to this point we can find no flaw or defect in plaintiff's title.

The claim of Fritsch, which constitutes the basis of the purchaser's

refusal to take the property, is stated as follows: It is said that in 1857, and before her reputed conveyance to Adylly Porges, Rosa Marini conveyed the lots in question to one Rafael Maretzek, and in the same year Rafael Maretzek conveyed them to one Appolonie Maretzek. Neither of these deeds is on record, no person professes ever to have seen them, and no evidence that they ever existed is produced, although Appolonie Maretzek was apparently living as late as May 5, 1906, on which date she executed a deed of the lots to Frank Fritsch, which deed constitutes the basis of his claim to the property. It is clear, upon the conceded facts, that Fritsch took no title under the deed from Appolonie Maretzek. When this deed was made, the plaintiff was in the actual possession of the property, claiming under a title adverse to that of Appolonie Maretzek. The deed to Fritsch was, therefore, absolutely void. Real Property Law, Laws 1896, p. 603, c. 547, § 225; De Garmo v. Phelps, 176 N. Y. 455, 68 N. E. 873; Dever v. Hagerty, 169 N. Y. 481, 62 N. E. 586. Nor had Appolonie Maretzek herself, at the time of the sale to respondent, any title to the property, as against that of plaintiff. Apart from the utter lack of evidence that Rosa Marini ever conveyed these lots to Rafael Maretzek, or that he conveyed them to Appolonie Maretzek, and assuming that such conveyances were made some time in 1857, still, as against Appolonie Maretzek and any one claiming under her, plaintiff's title is superior by virtue of the quitclaim deed executed by Rosa Marini (Herzfelder) in 1891. At that time the plaintiff was in actual possession of the property, the deeds under which Appolonie Maretzek claims title, if existent, had never been recorded, and there is neither evidence nor presumption that plaintiff knew or had notice that Appolonie claimed to be the owner of the property. Section 241 of the Real Property Law (Laws 1896, p. 607, c. 547) provides that every conveyance of real property, on being duly acknowledged, shall be recorded, and that:

"Every conveyance not so recorded is void as against any subsequent purchaser in good faith and for a valuable consideration, his heirs or devisees of the same real property or any portion thereof, whose conveyance is first duly recorded."

Hence, if plaintiff was a purchaser in good faith, and for a valuable consideration, her conveyance from Rosa Marini (Herzfelder) having been recorded prior to that from Rosa Marini to Rafael Maretzek, and his conveyance to Appolonie Maretzek, conveyed to plaintiff an unassailable title as against Appolonie Maretzek, whose deed has not even yet been recorded, and the effect of the deed from Rosa Marini (Herzfelder) to plaintiff is none the less because it is in form what is known as a quitclaim deed. Wilhelm v. Wilken, 149 N. Y. 447, 44 N. E. 82, 32 L. R. A. 370, 52 Am. St. Rep. 743. That plaintiff was a purchaser in good faith and for a valuable consideration sufficiently appears, and nothing is proven to the contrary by the fact that in the former foreclosure suit Appolonie Maretzek was made party defendant. This may have been done for greater caution, or because plaintiff feared that Appolonie might assert some claim to or interest in the property. It certainly does not indicate, or even suggest, that

plaintiff knew that Appolonie Maretzek laid claim to a superior title to the property, for the allegation respecting her in the complaint in that action is that she had or claimed to have "some lien or interest in said real estate subject to the lien of said mortgage." If, therefore, the plaintiff had no knowledge or notice, when she took the confirmatory deed in 1891, that Appolonie Maretzek had or claimed a title to the property superior to that derived under the mortgage, she was a purchaser in good faith and acquired a title superior to any that Appolonie Maretzek, or any one claiming under her, can succcessfully assert. If it is claimed by the purchaser that plaintiff had, as matter of fact, knowledge or notice of the adverse claim of title, it is incumbent upon him to show the fact. It is the duty of a purchaser who refuses to take title by reason of alleged defect, to point out and prove the defect upon which he relies. Greenblatt v. Hermann, 69 Hun, 298, 23 N. Y. Supp. 565. The facts disclosed by the moving papers bring this case precisely within the ruling in Jay. v. Wilson, 91 Hun, 391, 36 N. Y. Supp. 186. In his opinion in that case, which was adopted by the Court of Appeals (158 N. Y. 693, 53 N. E. 1126), the late Presiding Justice of this court said:

"It is undoubtedly the rule, as stated in Irving v. Campbell, 121 N. Y. 353, 24 N. E. 821, 8 L. R. A. 620, that a purchaser is not bound to take a title which he can defend only by a resort to parol evidence, which time, death, or some other casualty may place beyond his reach, and that a purchaser will not generally be compelled to take a title when there is a defect in the record title which can be cured only by a resort to parol evidence. But in the case at bar there is no defect in the record evidence. It is complete. The purchaser could not be compelled to resort to parol evidence for the purpose of defending his title. The sole ground upon which it is claimed that the title is not marketable is the fact that, subsequent to the record of a deed of a purchaser in good faith, there appears from his grantor a deed of a previous date upon the record. This subsequent deed casts no cloud upon the title of the purchaser. His record title is superior, and there is not a tittle of evidence impeaching that record title. But it is claimed upon the part of the respondents that if the grantee of the subsequent deed should show that the purchaser who paid his money for the property knew of the existence of this deed, or if the grantee therein was in possession of the property, the title could be impeached. There is not the slightest attempt to prove that the grantee in that deed ever was in possession, or that the first purchaser had any reason to suspect the existence of any such deed. If such a procedure is to create a cloud upon title, then no purchaser is secure, because his grantor, after he has conveyed and his grantee's deed is placed on record, may sign and acknowledge a new deed, dated back of the deed by which he has conveyed the property, and record it, and thereby create a cloud upon the title. The validity of titles cannot be subject to any such schemes or devices. The record title in the case at bar was good. It required no parol evidence to sustain it, and hence, according to the authority cited, the title was a marketable one."

It follows that the respondent's objection to the title was unsubstantial and insufficient. If the matter had rested here, we should have nothing to do but to reverse the order appealed from, leaving the plaintiff to take appropriate action to enforce the purchaser's liability under the bid. It appears, however, from the moving papers, that upon the respondent's refusal to accept the title the referee, in accordance with the conditions of the terms of sale, resold the property, and that upon the resale it was bought in by the plaintiff at a much less sum than had

been bidden therefor by respondent. Under these circumstances specific performance of the respondent's purchase cannot be enforced, and the most that could be done would be to hold him liable for the difference between the price bidden by him and the price at which the property was subsequently sold. Even this remedy, however, cannot be resorted to in the present case. In order to hold a puchaser for the difference between the amount of his bid upon a sale which he unwarrantably refuses to complete and the bid obtained at a resale, it is essential that the resale should be made under the same terms of sale as those upon which the first sale was made; for a resale upon different terms affords no just measure of the liability of the defaulting purchaser. Riggs v. Pursell, 74 N. Y. 370. It appears that upon the resale the premises were offered "subject to an alleged claim made thereto by Frank Fritsch by lis pendens and complaint filed May 8, 1906." This was a substantial and material change in the terms of sale, and it is quite impossible to say that the inclusion of this clause therein did not operate to discourage competition for the property and thus lessen the price bid for it. Indeed, the irresistible presumption is the other way; for the offering of the property subject to the claim of Fritsch imparted to that claim an importance to which it was not entitled, and would naturally serve to frighten away possible purchasers. Under these circumstances, while the purchaser was in the wrong in refusing to take title, and therefore cannot be allowed his expenses and interest on his deposit, it would be idle to remit the case for a further motion, as no damages can be awarded against him, and there is no reason for holding his deposit, except to apply to the payment of damages.

The order appealed from will therefore be modified by striking out so much thereof as directs that the plaintiff pay to the respondent the auctioneer's and auction room fees paid by him, and interest on that sum and on the sum of $445 deposited with the referee, and the sum of $150 fixed and allowed for the expense of examining the title, and $10 allowed as costs of motion, and, as so modified, the order will be affirmed, without costs in this court.

O'BRIEN, P. J., and INGRAHAM and CLARKE, JJ., concur.

LAUGHLIN, J. I dissent, and am for affirmance.