JOHN L. WHITE, Plaintiff, *v.* JAMES O. SEBRING, Defendant.

Supreme Court, Steuben County, March 29, 1929.

*Stowell & Ryon,* for the plaintiff.

*James O. Sebring,* in person, for the defendant.

RODENBECK, J. This is a motion to open a default in appearance at a Trial Term by the defendant. The case was set down at the opening of the term and was at the head of the calendar the following day, when the defendant Sebring defaulted, and proofs were put in and a judgment rendered against him, after an amendment of the complaint with reference to a demand for interest. A motion to open the default was denied by the learned trial justice, and this denial has been affirmed by the Appellate Division (224 App. Div. 811). This motion is based upon the discovery of new evidence, which becomes pertinent, since the learned trial justice, in his opinion refusing to open the default, said: " In his moving affidavit defendant does not even show that he has a meritorious defense."

The action is brought to recover moneys from defendant Sebring,

which plaintiff claims he improperly retained upon the satisfaction of a judgment recovered by the plaintiff, for whom Sebring appeared. He bases his right to recover upon the claim that, under his contract with Sebring, forty per cent of the recovery was to be allowed Sebring and one Ashton, private counsel of plaintiff, who, with plaintiff, resided in the State of Pennsylvania. Sebring and Ashton were retained to recover certain moneys for the plaintiff, and, under a written agreement, the plaintiff agreed to pay them twenty-five per cent of any recovery. Under a later agreement made with Sebring alone, he agreed to pay Sebring forty per cent. He said in his letter: " In regard to the case you are handling for me against the Onondaga Co. Savings Bank, if you will hurry this up, I will give you, on all but the rent you collected of M. Reece, a commission of 40%." This was after a judgment recovered against the plaintiff had been reversed, and before the second trial of the action in which plaintiff was successful. Sebring retained forty per cent of the recovery for himself and sent ten per cent to Ashton, and now it is sought to recover from Sebring an additional ten per cent, with one additional item, on the theory that the forty per cent was to cover the entire allowance to these two attorneys.

The plaintiff is confronted with two written contracts, in one of which he agrees to pay Sebring and Ashton twenty-five per cent of the recovery, and in the other of which he agrees to pay Sebring alone forty per cent. He contends that the latter agreement, which is embodied in a letter written to Sebring, was intended to supersede the earlier agreement between Sebring and Ashton, and so alleges in his complaint, although there is nothing in the letter to indicate it. Sebring claims that the only construction that can be placed upon these two contracts is that he was to receive forty per cent. It appears obvious, from the two contracts, that Ashton has not been eliminated as a recipient of compensation, and also that he was not, in terms, included in the second contract. It may be that the plaintiff intended, in the light of the first adverse decision, to pay Sebring forty per cent and to pay Ashton one-half of the twenty-five per cent that he had agreed to pay him, but this does not appear on the face of the papers themselves. It may very reasonably be contended that the forty per cent agreed to be paid Sebring was in place of the twelve and one-half per cent agreed to be paid him under the first contract, but the terms of the letter did not eliminate Ashton, who could still fall back upon the earlier contract.

The difficulty with the plaintiff's position is that he is confronted

with these two written contracts, which, in this action, he cannot change or contradict by parol proof. This is what he attempted to do in proving his case when he testified in answer to a question put to him by the court: "You changed the 25% in the contract to 40%?" Answer: "Yes." Of course, on the face of the papers, he did nothing of the sort and could not recover under the contracts made by him, except upon the theory that the letter sent by him, constituting the later contract, was intended to apply to both Sebring and Ashton, giving to Ashton one-half of the forty per cent which was agreed, in terms, to be paid Sebring. The only way in which the plaintiff could recover, under the theory of such a contract, was by reforming the contract which he actually made so as to express what he claims was the understanding between him and Sebring and Ashton.

Instead of taking this course, the plaintiff has been allowed to recover against Sebring the amount that he paid to Ashton, who was the plaintiff's private counsel, reducing Sebring's allowance in the case to thirty per cent, although Sebring was the attorney of record and took the burden of all the proceedings in court. If the plaintiff's contention is maintained, there is a possibility that Ashton may sue to recover another ten per cent from Sebring, leaving Sebring twenty per cent for doing all the work, and Ashton twenty per cent for doing nothing in connection with the litigation. The plaintiff also contends that Sebring agreed to pay plaintiff the additional ten per cent and disbursements, but this is denied in the answer and raises an issue that should be tried in the usual way.

This motion is not a repetition of the motion made before Mr. Justice EDGCOMB, since the second contract was not placed before the learned trial justice and was not discovered by Sebring until recently. This is shown by a portion of the opinion of the learned trial justice, in which he says: "It is conceded that before the action against the bank was commenced this plaintiff and Mr. Sebring entered into a written contract by the terms of which Mr. Sebring was retained by the plaintiff to prosecute said action, and was to receive for his services and disbursements 25% of all moneys recovered. The plaintiff alleges that he later agreed verbally to increase that percentage to 40%, if Mr. Sebring would speed up the law suit." This is an application, therefore, based upon new evidence, and, in such a case, a motion may be renewed. (*Riggs* v. *Pursell*, 74 N. Y. 370.) The power of the court to set aside its judgments is not limited by the Civil Practice Act, section 108 (Code Civ. Proc. § 724) for, as EARL, J., says in *Ladd* v. *Stevenson* (112 N. Y. 325): "The whole power of the court to relieve from

judgments taken through 'mistake, inadvertence, surprise or excusable neglect,' is not limited by section 724; but in the exercise of its control over its judgments it may open them upon the application of anyone for sufficient reason, in the furtherance of justice. Its power to do so does not depend upon any statute, but is inherent, and it would be quite unfortunate if it did not possess it to the fullest extent." (See article " The Power of the Supreme Court of the State of New York under the Constitution to Regulate its own Procedure," N. Y. State Bar Assn. Reports, vol. 41, p. 242.)

The desire to do justice is the prime consideration of the courts, and this cannot be done unless the parties have an opportunity to be heard and this opportunity should not be abrogated by any technical rules of law where there is a meritorious defense. The principle laid down in *Allen* v. *Fink* (211 App. Div. 411) should be applied in this case: " The policy of the courts is to be humane and not unduly harsh and punitive in its treatment of suitors and attorneys who have made mistakes; * * *. To that end there is given to courts a large discretion in the control of their own proceedings, in opening defaults in the furtherance of justice, even after judgment entered." Under the circumstances, it seems that defendant Sebring should be entitled to his day in court.

The motion should be granted in order that the terms of the contract made between plaintiff and defendant, and other issues, may be passed on. The default is opened and the judgment vacated, upon payment by defendant of the taxable costs on the default and ten dollars costs of motion within ten days after service of an order in accordance herewith; otherwise, the motion is denied, with ten dollars costs. So ordered.