81  453
12ap 36

NEW YORK AND NEW JERSEY TELEPHONE COMPANY, Respondent, *v.* METROPOLITAN TELEPHONE AND TELEGRAPH COMPANY, Appellant.

*Res adjudicata — a non-appealable interlocutory decree or order should not be given the force of a final adjudication.*

Where an issue is presented by the answer of a corporation in an action to which it is a party, as between it and the other parties to the suit, the question considered and decided is *res adjudicata*, notwithstanding the fact that such determination was made in the court of a foreign State, and was in form an order made upon a motion for an injunction.

An interlocutory decree or order, which may not be appealed from until after final judgment, is a mere step in the proceedings ultimately to ripen into a judgment which may be reviewed, and the force and effect of a final adjudication should not be given to it, for the party defeated by such order or decree has yet the right to have it reviewed, and so long as that right remains nothing is finally or conclusively settled.

APPEAL by the defendant, the Metropolitan Telephone and Telegraph Company, from an interlocutory judgment of the Supreme

Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 5th day of August, 1893, upon the decision of the court rendered after a trial at the New York Special Term, and also from an order entered in said clerk's office on the 2d day of April, 1894, denying the defendant's motion to set aside the findings and decisions of the court, and for a new trial of the issues made on a case containing exceptions as settled.

*Wheeler H. Peckham,* for the appellant.

*John E. Parsons,* for the respondent.

PARKER, J.:

August 6, 1879, the Bell Telephone Company of New York (hereinafter called the Bell Company) entered into a contract with the Domestic Telephone Company, a New Jersey corporation (hereinafter called the Domestic Company), by which the Domestic Company acquired exclusive right and license to use and rent to others to use, certain telephones under a patent owned by the National Telephone Company of Massachusetts, in the district composed of the city of Newark and the townships of Harrison and Kearney in New Jersey, for the period of five years, from September 1, 1879. By the eleventh clause of such contract it was provided as follows: " If, at the expiration of the above period of five years (meaning the period last aforesaid), the party of the first part (the Bell Company) shall not desire to conduct the business of telephonic district exchange directly within said district (the Newark district) of the party of the second part (the Domestic Co.), or of merging said district into some other district, but shall, on the contrary, desire to have such business conducted for it, then, and in such case, the party of the second part (the Domestic Co.) shall have the first right of acquiring the license or agency to conduct such business, at such rate of rental, and upon such terms, as may then be fixed and determined by said party of the first part (the Bell Co.)."

The Bell Company, July 1, 1880, assigned this contract to the Metropolitan Telephone and Telegraph Company, this defendant.

October 2, 1882, defendant and the New Jersey Telephone Company, a New Jersey corporation, subsequently consolidated with plaintiff (which shall hereinafter be spoken of as the plaintiff), made

a contract which in part consisted of a license to plaintiff to use and license telephones in certain territory in New Jersey other than but surrounding the Newark district. This contract, after reciting the agreement between the Bell Company and the Domestic Company, contained the following provision :

" Now it is agreed that the second party (the New Jersey Co.) shall have, and the first party hereto (this defendant) hereby assigns and sets over to the second party, all the right, title and interest and benefit of the first party hereto, of, in, to and under the said license agreement with the Domestic Telegraph and Telephone Company, whether under or in pursuance of said agreement with said Bell Telephone Company of New York, or otherwise however — subject, however, to the burdens and obligations resting on the first party. hereto under the same.

" It being, however, expressly understood and agreed that at the expiration of the present term of said license agreement, to wit, on the 1st day of September, A. D. 1884, the territory covered thereby shall come under the license contract hereto annexed, and be merged with the territory covered thereby, unless by the terms thereof said Domestic Telegraph and Telephone Company shall have the right to compel and shall compel an extension or renewal thereof, in which event said territory shall, upon the expiration of such extension or renewal, come under the license contract hereto annexed and be merged with the territory covered thereby."

Thereafter, by a decree of a New Jersey Court of Chancery, the defendant was required to give the Domestic Company an extension of its contract for a period of five years, and the defendant made performance in accordance with such adjudication. Plaintiff at once took the position that the extension of the contract with the Domestic Company for a period of five years was in violation of defendant's contract with it. That the agreement provided that the Newark territory should come under the license contract, unless *by the terms thereof* (agreement August 6, 1879) the Domestic Company should have the right to compel, and should compel, an extension or renewal thereof. The extension compelled, plaintiff urged, was not because of the terms of the contract of August 6, 1879, but because of a subsequent parol agreement entered into between the parties, by which it was understood and agreed that if

the Domestic Company would furnish the money necessary to pay the Western Union Telegraph Company for a telephone plant owned by it in Newark, an extension of its contract for a period of five years would be granted.

It was further insisted on the trial at Special Term that the New Jersey Court of Chancery had passed upon the issues presented by the pleadings in plaintiff's favor in a suit to which both plaintiff and defendant were parties. By reason of such adjudication the plaintiff contended that the defendant was estopped from further questioning the matters decided.

The learned judge at Special Term conceded to plaintiff's contention in such respect much force, but rested his decision in favor of plaintiff upon the ground that the contract between plaintiff and defendant gave to the former the right to the Newark territory, unless, by the terms of the contract made between defendant and the Domestic Company, the latter had a right to, and did compel a renewal of its license and contract, and that by the terms of the contract of 1879 the Domestic Company had no such right.

We are of the opinion that the question to which the learned counsel for the appellant invites our attention has already been passed upon by the New Jersey Court of Chancery, and is, therefore, just as effectual as an adjudication and an estoppel as if it had been the subject of like disposition in the courts of this State. The record of all the proceedings had in the Court of Chancery is before us, and counsel for both parties invite our consideration of the several opinions delivered.

At the expiration of the term provided by the contract of August 6, 1879, the plaintiff claimed the right to the possession and use of the telephone property in Newark. Thereupon the Domestic Company commenced a suit in equity, in which it made defendants both this plaintiff and this defendant. The bill, among other things, set up the contract of August 6, 1879, and a demand on its part for an extension of the contract for another term of five years, and it contained a prayer that the Metropolitan Company be compelled to specifically perform such contract by granting to the complainant a new license, "upon such terms as may be determined by the court." As ancilliary to such relief, that, pending litigation, an injunction issue, restraining the defendants from removing the

telephones in complainant's possession and from interfering with its business in such district.

The joint and several answers of the defendants, among other things, contain the following: " These defendants, in further answering, say that paragraph 11 of the contract of August 6, 1879, under which the complainant claims a renewal of said contract or further license, is not binding as a contract or of any legal force, and is not enforcible in equity or in law, and this court can make no decree to compel a specific performance of the same.

" These defendants also say that the clause in the memorandum of agreement referred to in regard to the preference in making any contract at the termination of the agreement is of like character and not enforcible in equity or in law."

Upon the bill, answers and affidavits a motion for an injunction was heard. Defendants' answer challenging the validity and enforcibility of the contract, which complainant wholly relied on to establish its cause of action, required and received careful consideration at the hands of the vice-chancellor.

The court, in a somewhat lengthy opinion, discussed the question whether, under the contract, the complainant was entitled to a renewal of the lease. The conclusion was reached that the provision which was the subject of consideration could not be specifically enforced by a court of equity, and the opinion concluded as follows: " It is true that in cases of this kind, where an injunction is sought in aid of an action for specific performance, that the court will, as a general rule, if the complainant's case is strong enough to render it at all probable that he may, on final hearing, be able to convince the court that he is entitled to relief, award an injunction; but in cases where there is no doubt — where it is clear that the contract sought to be enforced has not yet been made, or, if it has been made, that it is so incomplete or uncertain that it cannot be enforced — an injunction must be denied, for the very obvious reason that the complainant has no equity which entitles him to the writ." (*Domestic Telegraph & Telephone Co.* v. *Metropolitan Telephone Co.*, 39 N. J. Eq. 160.)

On appeal to the Court of Errors and Appeals the order was affirmed by a divided court, the minority, in a dissenting opinion

written by one of their number, insisting that the complainant was. entitled to some relief under the eleventh clause of the contract, and, therefore, an injunction ought to have been allowed.

From the pleading and orders and opinions it is clear that the only question either considered or decided was the enforcibilty of the eleventh clause of the contract, and that issue was presented by the answer of this defendant, in an action to which it was a party. As between it and the other parties to the suit, the question considered, and the only one, was, therefore, *res adjudicata.* (*Bangs* v. *Strong,* 4 N. Y. 315 ; *Ashton* v. *Rochester,* 133 id. 187 ; *Culross* v. *Gibbons,* 130 id. 447–454 ; *Smith* v. *Zalinski,* 94 id. 519–521 ; *Demarest* v. *Darg,* 32 id. 281–290 ; *Burhans* v. *Van Zandt,* 7 id. 523.)

Our attention has not been called to any decision holding that such an order is not conclusive as to any fact as to which the party had a hearing and the court passed upon.

*Riggs* v. *Pursell* is the first case cited by the appellant *contra.* That case recognized a change in the rules relating to orders made on motion, as estoppels occasioned by the provisions of the Code of Civil Procedure giving the right of appeal from orders.

The first decision in the Court of Appeals on that subject was. *White* v. *St. John* (25 N. Y. 203). This case was referred to in the opinion in *Riggs*' case, and of it in part it was said that the familiar right of a party to renew a motion upon a different state of facts, or by supplying defects in proof, is not in any manner questioned or impaired by the decision. In the *Riggs* case the court held that it was not precluded by its former decision from considering certain additional and material facts, which were not before the court or passed upon in the first motion. This case was brought to the attention of the court in *Smith* v. *Zalinski* (*supra*), in which it was held that where, after issue had been joined in an equity action, the plaintiff transfers his interest, the transferee may move to be substituted as plaintiff, and where such motion is made upon notice to the defendant, and an order of substitution is granted without directing supplemental pleading, or an amendment of the complaint, the question as to title in the substituted plaintiff is determined by the order, and may not be raised upon the trial.

The court said : " But the learned counsel for the appellant, cit-

ing *Riggs* v. *Pursell* (74 N. Y. 370), insists that such an order is not final and conclusive in an after controversy.   That is true in the sense explained by that decision.   That the motion may be renewed with the consent of the court, and even without that consent, upon a new and different state of facts; that where the motion was litigated a matter not necessarily involved in it, and not in fact litigated, is not concluded by the order, this court certainly held * * * ownership was the one vital question involved in that motion and its decision. * * * "

The order directing substitution "is not weakened by the fact that defendant made default.   The court had a right to assume that the alleged ownership was conceded and that no issue was raised over it."

In *Webb* v. *Buckelew* (82 N. Y. 555) the question presented was whether an interlocutory order or decree in an equity action, from which, by the provisions of the Code of Civil Procedure, appeal is postponed until final judgment, is conclusive between the parties and privies.   It was held not, and the learned author of the opinion, when writing in *Smith* v. *Zalinski*, omitted to refer to it as bearing upon the question then being decided, probably for the reason that he did not consider it in point.   Certainly, the distinction between the two cases is marked.   When an order is made from which it is provided an appeal may be taken, there is every reason why the determination of the court, which results in the order, should be binding upon all the parties to the action or proceedings, and to such effect are the authorities.   But an interlocutory decree or order, which may not be appealed from until after final judgment, is a mere step in the proceedings, ultimately to ripen into a judgment which may be reviewed, and the force and effect of a final adjudication should not be given to it.   For the party defeated by the order or decree has yet the right to have it reviewed, and, so long as that right remains, nothing is finally or conclusively settled.

The final determination of the New Jersey Court of Chancery was just as effectual as an adjudication and estoppel as if it had been rendered by the courts of this State.   (*Dobson* v. *Pearce*, 12 N. Y. 156; *Revere Copper Co.* v. *Dimock*, 90 id. 33.)

April 6, 1885, the bill of complaint was amended, pursuant to an order of the chancellor, by the insertion of an averment, in effect,

that after the execution of the contract of August 6, 1879, the Bell Company, with the knowledge and assent of the defendant, independently contracted with the Domestic Company to renew its license in the Newark district for a further term of five years, upon certain conditions, which were duly provided by the Domestic Company.    Upon this amendment issue was joined, and subsequently such proceedings were had as resulted in a decree, wherein it was adjudged, among other things, that subsequent to the making of the contract of August 6, 1879, and on or about the 16th day of April, 1880, the Bell Company and the Domestic Company entered into a supplemental verbal agreement, that in consideration of the purchase by the Domestic Company of the telephonic plant and business operated in Newark by the Western Union Telegraph Company, if the Bell Company, at the expiration of the original contract, should exercise the option of purchasing the plant and business established by the Domestic Company, in accordance with the terms of the contract, it would also purchase of such company the Western Union plant in said city upon the same terms; if it determined not to conduct directly such telephone business in the Domestic Company's district, it would renew the Domestic Company's contract of August, 1879, for the additional period of five years, upon the same terms as provided in said contract.    It was further adjudged that the complainants were entitled to a specific performance of said contract, and it was decreed that the defendant execute and deliver to the Domestic Company a new license or contract, to run for five years from the 1st day of September, 1884, with terms the same as provided in the contract of August 6, 1879.

The opinion of the court is reported in 41 N. J. Eq. 241.    An appeal was taken to the Court of Errors and Appeals, where the decree was affirmed.    (*Metropolitan Telephone & Telegraph Co. and Another* v. *Domestic Telegraph & Telephone Co.*, 44 N. J. Eq. 568.)    That court reached the conclusion that the committee which purported to represent the Bell Company were without authority to bind the Bell Company, but that the Domestic Company accepted the proposal then made, and thereafter, and in accordance therewith, furnished the sum of $11,500 necessary to purchase the plant of the Western Union Company.    That the act of the Domestic Company in performing that condition was accepted as ratifying and

validating the unauthorized acts of the executive committee in proposing the contract upon that condition, and also as estopping the Metropolitan Company from denying the existence of the contract, and its binding force on that company.

The opinion concludes, "for these reasons I think a contract came into existence between the parties which ought in equity to be performed according to its terms."

Thus it was established by the decisions of the court having jurisdiction of the parties:

1. That by the terms of the contract of 1879 the Domestic Company had not the right to compel the Bell Company (or its assignee, this defendant) to renew its contract.

2. That the contract of renewal made with the Domestic Company was in pursuance of the subsequent verbal arrangement which persuaded the Domestic Company to so act as to estop the Bell Company and its assignee from refusing to carry out the agreement.

The appellant contends that notwithstanding the agreement between it and the plaintiff provided that the Newark territory should come under the license contract, " unless by the terms thereof (referring to the contract of August, 1879) the Domestic Company shall have the right to compel and shall compel an extension or renewal thereof," should be more broadly construed, and that such a construction as the appellant contends for is in fact required by the surrounding facts and circumstances which should be considered by the court. And further, that it was error to hold that the supplemental verbal agreement found by the final decree in the New Jersey suit constituted a breach of the agreement of October, 1882. But if we are right in the view we have expressed, that it has been determined in an action in the New Jersey Chancery Court, to which the plaintiff and defendant were parties, that the Domestic Company had no right to compel an extension of the agreement of August, 1879, the defendant is now estopped from questioning it.

The judgment should be affirmed, with costs.

Van Brunt, P. J., and Follett, J., concurred.

Judgment affirmed, with costs.