### COE v. PATTERSON et al.

(Supreme Court, Appellate Division, Fourth Department. November 13, 1907.)

1. RECEIVERS—ACTIONS AGAINST RECEIVER—OFFICIAL CAPACITY.
　　Where a purchaser at a receiver's sale sued the receiver in his official
　　capacity for misrepresentation, such action indicated an election not to
　　charge the receiver personally, and the judgment recovered by such pur-
　　chaser merely established the amount of his claim against the receiver.
　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, § 374.]

2. SAME—JUDGMENT—PRIORITY IN DISTRIBUTION OF ASSETS.
　　Ordinarily a judgment against a receiver for misrepresentations in the
　　sale of property gives the judgment creditor no preference in the distri-
　　bution of assets in the hands of the receiver over other creditors in the
　　same class.

3. SAME—RECEIVER'S SALE—PART PAYMENT—FORFEITURE—EFFECT.
　　Where a purchaser of property at a receiver's sale failed to comply with
　　his bid, and the court ordered the cash payment made at the time of the
　　sale forfeited, such payment became a part of the trust fund for dis-
　　bursement by the receiver.

4. COURTS—CONFLICTING JURISDICTION—COURTS OF OTHER STATES—RECEIVERS.

Where a receiver was appointed for an insolvent New Jersey corporation in that state, an order by the New York Supreme Court subsequently appointing such receiver as receiver of the corporation's assets in New York was subsidiary to and in recognition of his appointment in New Jersey, so that the orders and decrees of the New Jersey court in the receivership proceedings were binding on the New York courts.

5. RECEIVERS—JUDGMENT—PAYMENT.

Though money or property in the custody of a receiver may be applicable to the payment of a judgment against him as receiver, he is protected by the court's order for expenditures made in reliance thereon while the order is in force, though it may be afterwards reversed.

6. SAME—BOND—LIABILITIES OF SURETIES.

Before a suit can be maintained against sureties on a receiver's bond, all remedies available against the receiver must be first exhausted.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, § 427.]

7. SAME—ACCOUNT—APPROVAL—DECREE.

Where the last account of a receiver which was approved showed a balance of $1,200 in his hands, a subsequent account, on which no action was shown to have been taken, indicating an expenditure of more than the amount of such balance, was ineffective to relieve him from liability for the balance previously shown, under the rule that the condition of a trust is determined only by a decree of a court.

8. SAME—LIABILITIES OF SURETIES—CONDITIONS—ACCOUNTING.

Where a judgment was recovered against a receiver in his official capacity, it was primarily collectible from the receiver, and no action could be maintained against the sureties on the receiver's bond until there had been an accounting and a decree establishing the receiver's inability to pay.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, § 424.]

9. SAME—ACTIONS AGAINST SURETIES—COMPLAINT.

A complaint against the sureties on a receiver's bond, alleging the recovery of a judgment against the receiver, which remained unpaid, but failing to allege any accounting by the receiver, a lack of assets, or inability on his part to pay, was insufficient.

10. SAME—LIABILITIES OF SURETIES—PERSONAL JUDGMENT AGAINST RECEIVER.

Sureties on a receiver's bond are not liable for his failure to pay a judgment rendered against him personally.

11. SAME—PROCEEDINGS AGAINST RECEIVER—NOTICE TO SURETIES.

Where, after judgment against a receiver in his official capacity, an order was granted on notice to the receiver, but not to his sureties, directing him to pay the amount of the judgment to plaintiff within 10 days, but there was no accounting in such proceeding, nor ascertainment of the condition of the fund, the order did not add to the force of the judgment as against the receiver's sureties.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, § 425.]

12. SAME—SCOPE OF LIABILITY OF SURETIES.

Sureties of a receiver are not responsible for the receiver's application of funds not assets of the trust estate.

13. SAME—CONCLUSIVENESS AGAINST SURETIES OF JUDGMENT AGAINST RECEIVER.

Sureties on a receiver's bond, conditioned that he should faithfully discharge his duties as receiver, were not concluded by a judgment against the receiver, but were entitled to contest the merits of the judgment creditors' claim in a suit on the bond.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Receivers, § 425.]

14. SAME—ACTIONS AGAINST SURETIES—DEFENSES.

Where a purchaser of property at a receiver's sale failed to complete his bid, whereupon his initial payment was forfeited, and he subsequently recovered judgment against the receiver for an amount alleged to have been the sum so paid, the receiver's sureties, in an action on his bond based on such judgment, were entitled to show that the purchaser only paid a less sum on the purchase price of the property, or that some portion of the sum paid had been returned to him.

McLennan, P. J., dissenting.

Appeal from Trial Term, Monroe County.

Action by Harriet Coe, as executrix of George W. Coe, deceased, against Mary Patterson and another, as administrators of Thomas G. Patterson, deceased. From a judgment for plaintiff, and from an order denying defendants' motion for a new trial (103 N. Y. Supp. 472), defendants appeal. Reversed, and new trial ordered.

Jeremiah Casey recovered a money judgment in the Supreme Court, Monroe county, against Harry D. Leslie, as receiver of the Casey Machine & Supply Company, a New Jersey corporation. The judgment was assigned to George W. Coe, and this is an action at law by the executrix of the assignee of the judgment against the personal representatives of Thomas G. Patterson, now deceased, one of the sureties on the bond of the receiver of the corporation. The co-surety was named as a defendant in the summons and complaint, but service was not made upon him. At the close of the evidence each side moved for the direction of a verdict, and it was granted in favor of the plaintiff.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Pierre M. Brown, for appellants.
Eugene Van Voorhis, for respondent.

SPRING, J. In October, 1888, the Casey Machine & Supply Company was organized as a manufacturing corporation in pursuance to the laws of the state of New Jersey. Its capital stock was $100,000, but was made up largely of patented devices of uncertain value. The business, apparently, did not prove profitable, for in December, 1890, a bill was filed in the Chancery Court of New Jersey, on behalf of its creditors and stockholders, alleging its insolvency and asking for its dissolution. In the latter part of December of that year Harry D. Leslie, by an order in that action, was appointed receiver of the corporation. A similar action by the same plaintiff was about the same time commenced in the Supreme Court of the state of New York, as the plant and assets of the corporation were located in the city of New York; and on the 7th of January, 1891, Leslie was appointed, by an order of the Supreme Court, receiver of all the property of the corporation in this state, and executed a bond in compliance with the order of that court in the penalty of $20,000, and which was executed by Thomas G. Patterson, the defendant's intestate, and Valentine Hill as sureties. The condition in the bond was that if Leslie "shall faithfully discharge the duties of this trust as such receiver, then this obligation to be void; otherwise, to be in full force and effect." The order appointing Leslie receiver in the state of New York recited his appointment by the Court of Chancery in New Jersey, and added:

"The appointment of a receiver hereby made being in support of and ancillary to said appointment by said Court of Chancery of the state of New Jersey."

The receiver was directed by the Court of Chancery in September, 1891, to sell the assets of the corporation at public auction at its factory in New York, and the order required that 10 per cent. of the bid be paid in cash and the balance in 20 days thereafter, and the terms of the sale so provided. On the 24th day of September the sale was had, and Jeremiah Casey bid off the property in his own behalf, and for other stockholders as well, for the sum of $29,500, paying in cash $2,-950, the 10 per cent. required by the terms of the sale. Casey did not complete his purchase. The order, directing the sale and the terms in pursuance of it, contained a provision that any stockholder or creditor purchasing at the sale shall—

"have leave to apply to this court for relief as to the payment of the balance of his bid over and above the 10 per cent. above named, to the end that the whole or such part of the debt owing to him, or the value of the stock held by him, may be credited as a payment on account of his bid as shall seem under the circumstances to be equitable to the Chancellor."

Casey claimed that he bid in reliance upon this provision, as he and others represented by him were stockholders or creditors of the corporation. He applied to the Court of Chancery to be relieved from paying the balance of the purchase price in cash, but the court declined to do so. The receiver reported to the Court of Chancery, and bid of Casey was declared forfeited, and a resale ordered. Casey appeared by attorney upon this motion, and one of the recitals in the order is "that no sufficient excuse" appeared for his failure to complete the purchase, and no authority on his part to represent the other creditors or stockholders at the sale was presented. Upon the resale the property was sold for $11,700. The receiver commenced an action in the Supreme Court of the state of New York against Casey, just when the record does not disclose, to recover the difference between the bid on the resale and the amount of his bid, less the 10 per cent. payment. This action resulted in a nonsuit in the trial in April, 1897.

In November, 1894, Casey commenced an action in the Supreme Court of Monroe county against Leslie as receiver to recover the said sum of $2,950 paid by him, and after a trial recovered a judgment in June, 1901. The complaint in that action contains many allegations not now pertinent, and among other things it charges that the receiver "represented to the plaintiff, and others present at such sale, that he was authorized by the Court of Chancery of New Jersey to make such sales on such terms (those included in the terms of sale) and that the amount due any of the bidders for debts against the company, or for the value of the stock held by them, would be credited upon the amount of any bid they might make, and that the Court of Chancery of New Jersey had power and would make such credit upon any bid that might be made at such sale"; that the bid was made in reliance upon this promise and representation, and without any expectation of paying the full purchase price in cash; that the Chancellor refused to permit any application of payment by him or the creditors

whom he represented; and "that at the time of sale aforesaid the defendant well knew that no credit would be made upon the amount bid at such sale by the stockholders and creditors, and such statement made by him aforesaid was not made in good faith, but was false, and known to be false by the defendant at the time it was so made." The answer put in issue the substantive allegations of the complaint, with distinct affirmative defenses. The charge of the court is not in the record, so that we are not advised precisely what questions of fact were submitted to the jury. The judgment in that action is the foundation of the present one against the sureties of the receiver.

In order to comprehend certain aspects of the situation presented, we will briefly mention the conduct of the receiver in the administration of the insolvent corporation. In September, 1895, Leslie, as receiver, filed his accounts in the Chancery Court of New Jersey. They were referred to a master to audit and report, and the report was filed in October, 1897, showing a balance in the custody of the receiver of $4,272.66, and out of this the receiver was allowed for his services the sum of $3,000. In October, 1900, Casey obtained a "rule to show cause why the said receiver's accounts and the said master's report thereon should not be set aside and refused confirmation." The subject-matter of the objections of Casey was adjourned along from time to time, and finally in January, 1901, the Chancellor "filed his written opinion for the discharge of said rule to show cause," and the master's report was in all things confirmed, although no formal order or decree was made. In February, 1904, the Chancellor formally by decree discharged the rule and directed that out of the balance of $4,272.66 the receiver retain the sum of $3,000 for his services, which left in his hands $1,272.66, and "that the said receiver do forthwith account for the balance remaining in his hands after deducting the said sum allowed to him as aforesaid, and for any further sums which have since come to his hands, and as to his disbursements, if any, thereout." No other decree or order adjusting the accounts of the receiver was ever entered, so far as the record shows. In July following, the receiver filed a supplemental account for expenses for $1,-504.46, or more than the balance in his hands after the entry of the decree in February preceding, but the same was never approved by the Court of Chancery. There is nothing to show any settlement of the receiver's accounts in New York, and all the assets seem to have been accounted for in the court of New Jersey, which was the court originally entertaining jurisdiction of the insolvent corporation.

It will be borne in mind that the judgment, which is the basis of this action, was against Leslie as receiver. Casey may have had an election either to sue Leslie individually, if the charges of misrepresentation were true, or else sue him in his official capacity, and he adopted the latter. The judgment, therefore, established the amount of the claim against him as receiver, and ordinarily a judgment of that character gives the judgment creditor no preference over other creditors in the same class. Leslie has administered the trust in conformity to the orders of the court which appointed him. There is no claim that he misappropriated or wasted any money or disregarded any of the orders of the New Jersey court. As already suggested,

the Court of Chancery ordered that the $2,950 payment made by Casey be forfeited. The effect of this determination was to make the money a part of the trust fund, and, consequently, subject to the management of the receiver, the same as the other assets of the defunct corporation. The corporation was organized in that state. Casey, the largest stockholder by far, with other stockholders, was a resident of that state. The order of the Supreme Court of the state of New York appointing Leslie receiver was in recognition of and subsidiary to the order of the sister state. The court of New Jersey had jurisdiction, and its orders and decrees were binding, even on the courts of this state. Smith v. Central Trust Company, 154 N. Y. 333, 48 N. E. 553; N. Y. & N. J. Tel. Co. v. Met. T. & T. Co., 81 Hun, 453, 31 N. Y. Supp. 213; Simmons v. Saul, 138 U. S. 439, 11 Sup. Ct. 369, 34 L. Ed. 1054.

Casey had been a party to the proceeding. He had appeared in the Chancery Court after his bid and obtained extensions of time in which to complete his purchase. He applied to the court asking to be relieved from paying in cash, and in conjunction with other stockholders, whom he represented, to have debts due them and the value of their capital stock credited upon the amount of the bid unpaid, which was refused by the court. The order declaring the sum paid forfeited was made upon notice to him, and his counsel appeared upon the motion. In view of these facts, the receiver was authorized to consider the sum forfeited a part of the fund committed to him. If the receiver has money or property in his custody, it may be applicable to the payment of the judgment against him as receiver (Langley v. Warner, 3 N. Y. 327); but the order of the court protects him for expenditures made in reliance upon it. Even if the order was in effect reversed, it was a protection during its life. Lesster v. Lawyers' Surety Company, 50 App. Div. 181, 188, 63 N. Y. Supp. 804. It would seem, therefore, as if this judgment against the receiver would only be enforceable out of assets in his hands, if any there are.

Passing that, however, it seems clear that, before any resort can be had to the sureties on the bond, all the remedies available against the receiver must be exhausted. When his account was filed there were in his hands over $1,200. His subsequent account for disbursements has not been passed upon. The decree of a court determines the condition of the trust committed to the trustee. The ipse dixit of the receiver that he has used all the trust funds will not compensate for the absence of a decree determining that fact in an action against his sureties. The effect of the judgment against the receiver, at most, is to establish that he has received in his official capacity money which belonged to the plaintiff in that action. The import of the judgment is that he pay over this money to the plaintiff. Primarily it is collectible from the receiver. Before his sureties are to be charged, there must be an accounting and decree establishing his inability to do so. French v. Bauer et al., 134 N. Y. 548, 32 N. E. 77, 20 L. R. A. 560; Perkins v. Stimmel et al., 114 N. Y. 359, 365, 21 N. E. 729, 11 Am. St. Rep. 659; Hood et al. v. Hood et al., 85 N. Y. 561; Stilwell and Wife v. Mills, 19 Johns. (N. Y.) 304; Bieder v. Steinhauer, 15 Abb. N. C. (N. Y.) 428.

As already noted, this is not an action in equity asking for an accounting and determination as to the condition of the trust estate. It is an action at law. The complaint does not allege that any accounting has been had by the receiver. It does not allege lack of assets in his custody or inability to pay. It assumes that the recovery of the judgment and the mere omission to pay fixes the liability of the sureties on the bond. It does allege the insolvency of Leslie. If the judgment is regarded as one against him personally, then the sureties are not responsible. People v. Pennock, 60 N. Y. 421. Their liability is for failure by him to discharge "faithfully the duties of his trust."

After the recovery of the judgment by Casey an order was granted at Special Term of the Supreme Court July 28, 1902, on notice to the receiver, but not to the sureties, directing Leslie, as receiver, to pay to the plaintiff within 10 days the amount of the judgment. There was no accounting in Special Term, the condition of the trust fund was not presented to it, and the order does not add to the force of the judgment against the sureties. That order recites:

"That said $2,950 never became assets in the hands of said receiver, and should have been restored to the plaintiff on the failure of the defendant to consummate said sale."

If it be true that this money is not to be considered part of the assets of the trust fund, then the sureties are not liable. As was said in 11 American & English Encyc. of Law (2d Ed.) p. 883:

"It is held that the sureties on the bond of an executor or administrator are not liable for property received by him, which is neither assets of the estate nor subject to distribution by him, and to which as the legal representative of the decedent he was not entitled, although the court erroneously authorized him to receive it."

The court below, in denying a new trial, did so upon the ground that the judgment recovered by Casey against the receiver was conclusive upon the sureties, and the case was tried by the plaintiff's counsel upon that assumption. We cannot concur in this opinion. The authority relied upon for the decision was Douglass v. Ferris, 138 N. Y. 192, 33 N. E. 1041, 34 Am. St. Rep. 435. In that case a guardian had made a fraudulent settlement with his ward by turning over worthless property to him. The ward signed a receipt in full to the guardian, consenting that a decree be entered in the Surrogate's Court discharging the guardian, which was done. On discovering the fraud the ward commenced an action in the Supreme Court against his former guardian to set aside the receipt and decree and to recover the sum originally due him, and prevailed in the action. An execution was issued against the guardian and returned unsatisfied, and he then commenced an action on the bond, and recovered a judgment, which was affirmed by the Court of Appeals. There were several reasons assigned by the court why the action was maintainable against the surety without an accounting. In the first place, it was necessary for the ward to commence an action in Supreme Court against the guardian to set aside the decree and receipt, for the Surrogate's Court lacked the power to afford this relief. When the Supreme Court once entertained jurisdiction, it retained it over the whole case, to

adjust the rights between the guardian and the ward. In the second place, the condition of the bond given by his guardian and his sureties was that he should not only "faithfully discharge his duties as guardian," but also should "render a just and true account of all moneys and property received by him, and of the application thereof, and of such guardian in all respects to and before any court having cognizance thereof when thereunto required." The Supreme Court was one having jurisdiction of the subject-matter and the judgment was as binding upon the sureties as a decree of the Surrogate's Court settling his accounts. As the court said, at page 201 of 138 N. Y., page 1044 of 33 N. E. (34 Am. St. Rep. 435):

"The duty of the guardian guaranteed by his sureties was to account before any court of competent jurisdiction for the money or property that came to his hands by virtue of the trust, and, as the Supreme Court had such jurisdiction, its judgment against the guardian had, at least, the same force and effect as the degree of the surrogate would have had. The sureties by their contract had so connected themselves with the obligations of the guardian, and with the proceedings to bring him to an account, and with the judgment rendered, that it bound them, as well as the guardian, as to all questions necessarily involved."

The condition in the bond of an administrator is that he will obey all orders of the surrogate touching the estate committed to him. By reason of this obligation the decree of the surrogate is conclusive upon the surety. The breach is of a condition within the strict letter of the bond, and for the performance of which the sureties have undertaken in express terms to become responsible. The limit of the sureties' undertaking on the bond of the receiver of this corporation was that he would faithfully discharge the duties of his trust, and the authorities place a different construction upon this provision than upon that embodied in the bond of an administrator. Thomson v. Am. Surety Co., 170 N. Y. 109, 114, 62 N. E. 1073; Lesster v. Lawyers' Surety Co., 50 App. Div. 182, 186, 63 N. Y. Supp. 804.

In Thomas v. Hubbell, 15 N. Y. 405, 69 Am. Dec. 619, a deputy sheriff gave a bond to the sheriff containing the condition that it was to be void if Hubbell, the deputy, well and faithfully in all things performed and executed the duties of deputy sheriff. The deputy had levied upon property which he allowed to be removed from his custody. On account of this dereliction of duty the sheriff was sued, and judgment obtained against him, which he paid. The deputy had notice of the action, but no notice was given to his sureties on the bond. The sheriff sued the deputy, and the judgment was received in evidence against the sureties. They sought to prove that none of the property taken from the possession of the deputy belonged to the defendant in the execution, and this evidence was excluded. The court, in reviewing the question, held that the judgment was not conclusive against the sureties, basing its decision upon the terms of the condition of the bond.

In Thomson v. MacGregor, 81 N. Y. 592, the action was on the bond of a receiver, which had been given six months after his assumption of the duties of his trusteeship, and which contained the condition:

"If the said Charles B. Riker [the receiver] shall henceforth faithfully discharge the duties of his trust."

Upon the receiver's accounting, he was directed to pay over to his successor a certain sum, which he failed to do. The surety had no notice of the accounting. In an action against him upon the bond he endeavored to show that the receiver's delinquencies occurred before the bond was given; but the evidence was excluded, and the court reversed for that error. After distinguishing a bond of this character from the condition in an administrator's bond, the court say, at page 598:

"In every decision which has made the adjudication against the principal conclusive upon the surety, it has been founded on apt words or phrases other than a general promise to perform duty, and which indicated an understood purpose to contract beyond the ordinary liability. Where the condition of the bond is to obey the orders of the surrogate, to pay any deficiency arising on a foreclosure, to pay all damages and costs that may be recovered, there is apparent on the face of the instrument a purpose to submit to the judgment as conclusive."

And again at page 599:

"As between the principal and the creditors of the fund, it is the receiver's duty to pay according to the order, for he has been heard, and is bound by the adjudication. But, as between the surety and such creditors, it is not the receiver's duty to pay according to an order made without the surety's knowledge, as to which he has not been heard, and which is not against him, a binding adjudication."

Of like effect are: Douglass v. Howland, 24 Wend. (N. Y.) 35, 52, et seq.; Lesster v. Lawyers' Surety Co., 50 App. Div. 181, 63 N. Y. Supp. 804; Aeschlimann v. Pres. Hospital, 165 N. Y. 296, 300, 59 N. E. 148, 80 Am. St. Rep. 723; Thomson v. American Surety Co., 170 N. Y. 109, 62 N. E. 1073; De Colyar on Law of Guaranties (3d Ed.) p. 207.

If the defendant was able to show that Casey only paid $1,500 on the purchase price of the property which he bid off, or that some portion had been repaid to him, under the authorities cited, he would have been permitted to do so. The defenses upon which proof was given might have been held sufficient by the court to exonerate the defendant from liability, except for the fact that the court decided that the judgment against the receiver was conclusive upon the sureties, not merely of the amount of the demand, but as to all the facts determined by it. The judgment and order should be reversed, and a new trial ordered, with costs to the appellant to abide event.

Judgment and order reversed, with costs to the appellant to abide event. All concur (ROBSON, J., in result), except McLENNAN, P. J., who dissents.