David H. Lane *v.* Washington Hotel Company. Appeal of Charles F. Gummey, Executor and Trustee under the last will and testament of Julia N. Tyndale, deceased.

*Receivers—Corporations—Rights of creditors.*

Receivers of private corporations have no authority to interfere with the legal rights of creditors.

*Receivers—Corporations—Landlord and tenant—Distress—Receiver's sale —Lien on fund.*

Where a receiver of a private corporation goes into possession of real estate leased by the corporation, and the goods upon the premises are subsequently sold by the receiver under an order of court, the landlord has a lien on the fund raised by the sale for the rent which had accrued under the receivership. In such a case the fund should not be reduced by any part of the expense of the receiver's commissions or counsel fee, although the landlord may be charged with part of the cost of an audit, if an audit was necessary to adjudicate conflicting claims.

Where a receiver of a private corporation enters into possession of premises leased by the company, and collects rent from a subtenant, the landlord should, in equity, receive the entire amount so collected ; but where the receiver mingles it with the general fund which he used in conducting the business, and the landlord takes no steps to have the court direct such money set apart in payment of the rent, and it becomes impossible to identify it, the landlord will not be entitled to priority for such rental in the distribution of the fund raised by the receiver's sale of the property of the insolvent company.

Argued Jan. 11, 1899. Appeal, No. 230, Jan. T., 1898, by Charles F. Gummey, from order of C. P. No. 2, Phila. Co., Dec. T., 1893, No. 930, dismissing exceptions to adjudication. Before Sterrett, C. J., Green, Williams, McCollum, Mitchell, Dean and Fell, JJ.   Reversed.

Exceptions to report of Thaddeus L. Vanderslice, Esq., auditor.

The facts appear by the opinion of the Supreme Court.

*Errors assigned* were in dismissing exceptions to auditor's report.

*Theodore P. Matthews,* with him *Charles Francis Gummey, Jr.,* for Charles F. Gummey, executor, the appellant.—The rents collected by the receiver from the sublessee of part of the real estate demised to the receiver by the lessor, whose executor is the appellant, constitute in the receiver's hands a separate fund not subject to distribution among the creditors generally, but only to be applied in discharge of rent due by the receiver to appellant as executor of the estate of the said lessor: High on Receivers, sec. 470; Riggs v. Whitney, 15 Abbott's Prac. Rep. (N. Y.) 388; Wolf's App., 106 Pa. 545.

All the property, goods and chattels of the defendant company in the possession of the receiver, no matter where situated, are assets for the payment of all the indebtedness of the receiver and of the company, and all moneys derived from the sale of such property, goods and chattels constitute one common fund for the payment of such indebtedness, out of which creditors are to be paid in the order of their priority. After payment of the legal costs, charges and expenses incurred in the administration of the property and of preferred claims for wages, the balance of the fund, not being sufficient to discharge the claims of both landlords, is distributable between them pro rata in accordance with the amounts justly due them; to ascertain which the arrears of rent due by the receiver to the appellant's decedent for the months during which he paid rent to the other landlord, neglecting appellant's decedent, must first be paid to appellant, under the principle that equality is equity: Woodruff v. Erie Ry. Co., 93 N. Y. 623; Pierce v. Scott, 4 W. & S. 344; Beach on Receivers, sec. 514; Frank v. N. Y., etc., R. R. Co., 122 N. Y. 215; People v. Universal Life Ins. Co., 30 Hun, 143.

If the fund realized from the sale of the defendant company's goods is not a common fund, but the appellant, as executor of the deceased landlord, has a claim for rent only against the

proceeds of the sale of the goods and chattels on his distinct property, as found by the auditor, then such claim of the landlord has priority over all other claims, and this appellant is entitled to have the net proceeds of such sale paid over to him without further deduction: Barnes's App., 76 Pa. 50; Act of June 16, 1836, P. L. 755.

*J. Howard Gendell,* for John C. Grady, receiver, appellee.— Without an actual distress, or an order equivalent thereto, a landlord has no lien on the goods on the demised premises, and no preferred claim on their proceeds: Singerly v. Fox, 75 Pa. 112.

*Samuel Dickson,* with him *Edward Hopkinson,* for Edward C. Diehl, trustee, appellee.—The first point of the appellant would be well taken if the rents collected from the subtenant had been in hand and capable of being earmarked, but in no event could the fund realized from the goods on our premises be so applied.

The right of the appellee to a first claim upon the proceeds of the goods and chattels upon his premises was fixed by the decree of December 15, 1894, and it is submitted that the decree put Mr. Diehl in the same position as if he had been allowed to levy a distress and acquire a lien, for a court of equity may always treat that as done which ought to have been done.

If the receivership interferes with the right of a stranger, he may apply to the court to be heard pro interesse suo, and his rights will be protected against any inequitable interference therewith by the office of the court: High on Receivers, sec. 582; Howell v. Ripley, 10 Paige, 43; Fosdick v. Schall, 99 U. S. 235; Pairpoint Mfg. Co. v. Watch Co., 161 Pa. 17; Lowry v. Watch Co., 161 Pa. 123; Bell v. Wood & Co., 181 Pa. 175; Seventh Nat. Bank v. Shenandoah Iron Co., 35 Fed. Rep. 436; Farmers' L. & T. Co. v. Grape Creek Coal Co., 50 Fed. Rep. 481.

It is submitted, therefore, that the allowances to the receiver and his counsel should be so far reduced as to give payment to the two landlords in full.

OPINION BY MR. JUSTICE DEAN, March 13, 1899:

Premises 707, 709 and 711, Chestnut street, and 34 South

Seventh street, in the city of Philadelphia, were occupied by the Washington Hotel Company, a corporation which carried on the hotel business. It proved unsuccessful, and being financially embarrassed, the Court, on petition of David H. Lane and other stockholders, on February 14, 1894, appointed Hon. John C. Grady, receiver, with the additional order that, after taking possession of all the property of the company and turning the same into money as soon as practicable, he have leave to carry on the hotel until a proper disposition could be made of the assets.

The receiver conducted the business until December 6, 1894, a period of about eleven months; he then petitioned the court for a peremptory order of sale, averring that, notwithstanding his best efforts in behalf of creditors and stockholders, the business was a losing one. The court made the order as prayed for, and sale of all the personal property on the premises was decreed accordingly. The gross sum realized was $3,803.16, and an auditor was appointed to distribute it. It appeared, that at the date of the incorporation of the hotel company the premises were in the occupancy of John Tracey, as tenant, who leased from two owners. Julia N. Tyndale had let to him all of 34 South Seventh street, which connected with the second floor of 707 Chestnut street, at an annual rental of $3,000, payable in monthly instalments of $250. With the consent of the owner, Tracey assigned this lease to the Washington Hotel Company, and then the lessor executed another lease to the same company in her own name, for the period of five years from September 1, 1895, at an annual rental of $3,500, payable in monthly instalments of $291.66. 709 and 711 belonged to the Hopkinson estate, and Tracey also held a lease of these from Edward Diehl, trustee for five years, with the right to an extension for a second five years from September 1, 1895, at an annual rental of $8,250, payable in monthly instalments of $687.50. This lease, Tracey, with the approval of the trustee, also assigned to the hotel company. All the rental due Mrs. Tyndale was paid, up to and including May, 1894; and all the rental due the Hopkinson estate was paid up to and including April, 1894. The trustee then reduced the rental payable to the Hopkinson estate fifty per cent, and the receiver paid it down to and including September, 1894, and afterwards paid $250 of the

$343.75 due for October and then $200 on account. The auditor finds as facts, that there was a balance of rent due Mrs. Tyndale for the period covered by the occupancy of her premises by the receiver, of $1,750, and that there was due the trustee of the Hopkinson estate for the same time a rent balance of $1,612.50. The auditor first deducted from the fund receiver's commission, counsel fees and other costs, amounting to $1,639.80, leaving a balance of $2,163.36 for distribution; from this amount he further deducted $359.10, for servants' wages payable by the receiver, which is treated as a preferred claim, leaving $1,804.26 to be apportioned between the two landlords. As before noticed, the sum of the rent due both was $3,362.50 in nearly equal amounts, but as there was not nearly enough to pay both, he adopts, as the basis for apportionment, as nearly as he could ascertain, the amount of the net proceeds of the sales of personal property on the premises of the landlords respectively; this left for Mrs. Tyndale only $417.32, and for the Hopkinson estate $1,366.11, and a small balance of $20.82 for general creditors. The court overruled exceptions filed, and confirmed the report absolutely. We now have this appeal by the executor of Mrs. Tyndale, who assigns nineteen errors to the decree. They need not be discussed in detail, because the correctness of the distribution depends on the legal conclusion to be drawn from these few undisputed brief facts: 1. The receiver, by the authority of the court, about February 14, 1894, entered into the possession of the premises leased by Mrs. Tyndale to Tracey and the hotel company, under the terms of that lease. 2. He continued in possession, conducting a hotel for more than ten months. 3. On surrendering the premises, he owed to her rent in arrears, $1,750; and there was then upon her premises subject to distraint, personal property, as shown by the subsequent sale, to the value of $1,069.23.

It is not worth while discussing the question as to the jurisdiction of the court to authorize the continued possession of the hotel by its officer, the receiver. The courts can run bankrupt railroads, because the demands of the public absolutely require that they should be maintained as "going concerns." Whether there can be any sound judicial reason for continuing the business of an insolvent hotel corporation is, to say the least, very doubtful. But, without regard to this point, there is no

power in the courts, in the interest of creditors and stockholders, to take possession of property, operate it as a hotel and deprive the owner of any legal right. Mrs. Tyndale had leased the property to Tracey, and with her consent and approval he had sublet to the hotel company. Her right to enter upon the premises and distrain for rent on default being made in any monthly payment was unquestioned. The court could not by taking possession deprive her of this right, except by maintaining her status as landlord on any fund realized from the property subject to distraint. Admit the property of the hotel company, by the appointment of the receiver, went into the custody of the law, and was no longer subject to seizure on a landlord's warrant for default in payment up to that time, still her right to seize the property was merely transferred into a lien on the fund, which the court on distribution was bound to recognize. But all the rent due up to the time the receiver took possession was paid by him without question, as well as for several months afterwards. It is the rent payable by the receiver during the last months of his occupancy that constitutes her present claim. But he could have no other or more favorable exemption from her demand than his insolvent, the hotel company, had; nor could the court give him any. He was not receiver for her estate, but for her tenant; no insolvency of her tenant nor action of the court in the interest of the tenant's creditors could prejudice the landlord's right to her rent; and this right continued as long as the receiver occupied her property under the terms of the hotel company's lease. The receiver, except for this lease, would have been an intruder upon her property, even though acting by the assumed authority of the court. It has been uniformly held that receivers for private corporations have no authority to interfere with the legal rights of creditors : High on Receivers, sec. 321; Seventh Nat. Bank v. Shenandoah Iron Co., 35 Fed. Rep. 436.

The right of Mrs. Tyndale to distrain the goods on her premises, the day of the sale, for rent in arrears on that day, cannot be disputed; but as she could not in an orderly way exercise that right because of the manual possession of the goods by the court's appointee, she necessarily has a lien on the fund raised by the sale of them under the order of the court. The value of the property, as before noticed, was $1,069.23. The

receiver was at best nothing more than a trustee for creditors; not unlike an assignee for the benefit of creditors under the insolvent laws. The 1st section of the act of May 26, 1891, directs that where the fund in the hands of the tenant's assignee is not sufficient to pay the landlord's rent and the costs of assignment, so much of the costs shall be deducted from the rent as the landlord would have been subject to had he made sale under a distress. Although this provision cannot in its precise terms be made applicable to a receiver, we deem it in all respects equitable, and direct that it be adopted in making distribution of this fund. The $1,069.23 should, therefore, not be reduced by any part of the expense of receiver's commission or counsel fees; this sum, $1,000, should be put back into the fund for distribution. As an audit seems to have been necessary for the adjudication of the conflicting claims, we direct that appellant share pro rata with the other distributees the costs of the audit.

As to appellant's claim to have distributed to her the entire amount received from subletting a part of her premises, we think the claim, if it had been promptly urged, would have been regarded as well founded in equity. But the Court below should have been asked to direct the receiver at the time to set apart the fund so received in payment of her rent. Although aware of the subletting, she took no steps to assert her equity; in consequence, the receiver mixed these rentals with the general fund, and used them in conducting the hotel business; during the time he received these very rentals he was paying to her monthly her rent; she may have already received a large part; it is now impossible to identify them, and therefore impossible to administer the alleged equity.

As to any hardship resulting to the receiver and his counsel from thus sustaining the appeal, it is one resulting from their own neglect in deferring their claims until this particular sum was left for distribution. There came into the receiver's hands altogether, over $47,000; he only preferred this claim on the small balance of the proceeds of the personal property; this in large part belongs to the landlords, because the property was subject to distraint; the landlords did not request, nor did they need, the services of receiver or counsel.

It is directed that the decree be reversed, and that the record be remitted to the court below that a redistribution be made in accordance with this opinion.