COMMERCIAL PUBLISHING COMPANY, Respondent. *v.* SAMUEL C. BECKWITH, Appellant.

1. CONTRACT — EQUITABLE PLEDGE. Where, in an action brought by the assignee of a purchaser at a judicial sale to recover moneys claimed to have been due and owing the receiver of an insolvent newspaper corporation, it appears that the corporation, in consideration of a loan by the defendant to be paid in monthly installments, agreed to appoint him an agent for a specified period to procure advertisements for its paper in a territory specifically designated, he to fix the rates, collect the bills, render monthly statements and receive a specified commission, a provision in the contract that out of the moneys received a specified sum per month should be applied to the payment of the loan until paid constitutes an equitable pledge of the receipts for that purpose, and the receiver, if he accepts and publishes advertisements procured by the defendant, has no claim for moneys collected by the latter and applied upon the loan to the extent provided for in the contract, and the plaintiff cannot recover.

2. FORMER ADJUDICATION. A prior judgment in an action for winding up the corporation as insolvent, to which the defendant was made a party, which, so far as the record shows, does not adjudicate nor attempt to adjudicate his right to the moneys received by him for the advertisements, does not bar him from asserting his right thereto.

*Commercial Publishing Co. v. Beckwith,* 42 App. Div. 621, reversed.

(Argued April 29, 1901; decided June 1, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July

10, 1899, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*A. B. Porter* for appellant. The money in dispute did not come under the operation of the trust deed. (*Chase* v. *Petroleum Bank*, 66 Penn. St. 169.) The money in dispute was collected and retained by defendant under the lien and express authority constituted and contained in the contract of January 3, 1891, between himself and the Memphis Appeal Company. (*Com. Pub. Co.* v. *Beckwith*, 36 App. Div. 631 ; Pom. Eq. Juris. § 1237 ; High on Receivers [2d ed.], §§ 245-247, 348 ; Overton's Liens, 1, 30, 266 ; *Husted* v. *Ingraham*, 75 N. Y. 251; *Chase* v. *Peck*, 21 N. Y. 581 ; *Hale* v. *O. Nat. Bank*, 49 N. Y. 626 ; *Johnson* v. *Tyng*, 58 Hun, 501.) The trust deed passed no title to the disputed claims to the trustees, as the company had no title to the same, to the extent of $1,000 per month, which amount absorbed said claims. (High on Receivers [2d ed.], § 245.) The receiver took no different title to the property mentioned in the deed by virtue of his appointment as receiver than he had under the deed itself. Such title could only be the title held by the company. (*Kneeland* v. *Am. Loan Co.*, 136 U. S. 97.) The advertising matter published by the receiver for which the disputed moneys were collected was furnished by the defendant under the contract, and was all in the possession of the company at the time of the giving of the trust deed and the taking possession of the newspaper property by the receiver, and was one which was to be executed in its entirety and was not susceptible of division. (*Ames* v. *Ry. Co.*, 65 Fed. Rep. 969 ; High on Receivers [2d. ed.], § 205 ; *Ming* v. *Corbin*, 142 N. Y. 340 ; *Pierson* v. *Crooks*, 115 N. Y. 554; *Silberman* v. *Fretz*, 12 App. Div. 328 ; *Nightingale* v. *Eiseman*, 121 N. Y. 288; *Am. L. Co.* v. *Bank*, 152 Ind. 587; *Butler* v. *Butler*, 77 N. Y. 472; *S. Oil Co.* v. *Wilson*, 142 U. S. 313.) Neither the various suits pending against the

company and others interested, nor the consolidation thereof, invalidated or changed the terms or conditions of the contract of January 3, 1891, nor in any way affected the same, for the same was not at any time before the court for its consideration. (High on Receivers [2d ed.], §§ 204, 245, 247.)

*A. Walker Otis* for respondent. The contract of January 3, 1891, did not create a lien in favor of defendant on moneys due the Memphis Appeal Company. (*Express Co.* v. *R. R. Co.*, 99 U. S. 191; *Central T. Co.* v. *R. R. Co.*, 51 Fed. Rep. 15; *Ames* v. *U. P. Ry. Co.*, 60 Fed. Rep. 966; *F., etc., Co.* v. *R. R. Co.* 73 Fed. Rev. 712.)

HAIGHT, J. The plaintiff, as the assignee of the purchaser at a judicial sale, brings this action to recover moneys claimed to have been due and owing the receiver by the defendant.

The facts were agreed upon, and so far as they are material are as follows: On the third day of January, 1891, the defendant entered into a contract with The Memphis Appeal Company, a corporation engaged in publishing a newspaper at Memphis, in the state of Tennessee, of the name of "The Memphis Appeal Avalanche." The contract consists of two letters written by the parties, bearing the same date, which are as follows:

"MEMPHIS, TENN., *Jan. 3d,* 1891.

"S. C. BECKWITH, 48 Tribune Building, New York City:

"DEAR SIR.—In consideration of special efforts which you pledge yourself to make in our behalf to the best of your efforts and ability, and furthermore, in consideration of allowing you nothing in the shape of salary, office rents or traveling expenses, we hereby authorize and appoint you our sole and exclusive agent for a term of five years from September 1st, 1891, and sooner if possible, on a plain commission basis of twenty-five per cent on all business for all that portion of the United States, north of a line running east and west with the southerly boundary of Ohio, Missouri, embracing Cincinnati and St. Louis, including these two points.

"All applications for rates, space, etc., from aforesaid terri-

tory to be referred to you, and in case we should make a deal direct with any parties, agent or advertisers, from your territory (which, however, is not contemplated), we will allow you the commission named upon same, and refer it to you for collection.

"You are to collect all bills and render monthly statements, and to be held responsible for all accounts, except where a concern should fail through no fault of yours, and in event of that, you are simply to lose your commission, but not to be liable beyond that.

"You are not to represent any other morning paper in the state of Tennessee or Arkansas without our consent in writing, but to do all you can in every way, and at all times, within the above territory, to advance the interests of the Appeal Avalanche.

"MEMPHIS APPEAL AVALANCHE COMPANY.

"T. B. HATCHETT,
"*Bus. Manager.*

"Accepted — S. C. BECKWITH."

"MEMPHIS, TENN., *Jan. 3rd*, 1891.

"THE MEMPHIS APPEAL COMPANY, Memphis, Tenn.:

"GENTLEMEN.— In consideration of a contract this day entered into by and between us, I hereby agree to advance to you thirty thousand dollars ($30,000), as follows:

"$5,000 in cash on or before January 7th, $5,000 on or before the 12 of January, 1891, then $5,000 on the 26th of January, 1891, to take up your note now in the Nassau Bank of N. Y. for that amount. And $15,000 from time to time as you may advise me and so desire.

"The amount named of $30,000 to be loaned you on the Appeal Company's notes, indorsed by W. A. Collier, and I am to be further secured by a deposit as collateral of an equal amount of the capital stock of your Company, and which stock shall not be increased without my consent during the term of this loan; neither shall any incumbrance be placed upon the same.

"Said loan and interest at six per cent to be paid me in monthly installments by moneys coming into my hands from the advertising in your paper, in amounts, say $1,000 per month, until paid.

"S. C. BECKWITH.

"O. K. Memphis Appeal Company, T. B. Hatchett (*Business Mang'r*).

(Indorsed:) "As the debt is reduced I will surrender stock collateral *pro rata*.

"S. C. BECKWITH."

The contract, so far as appears, was performed to the mutual satisfaction of the parties until the 30th day of September, 1893, when the Memphis Appeal Company became insolvent and transferred by a deed of trust all its interest in the newspaper referred to, including the plant, good will, subscription list, advertising patronage, etc., to Robert J. Morgan and Andrew D. Gwynne, as trustees for the benefit of creditors. On the same day the trustees brought an action against the Appeal Company, the defendant in this action and others, to procure a judgment directing them to carry into effect the transfer to them as provided in the deed, and in that action one William J. Chase was appointed the receiver of all of the property transferred to the trustees, who was, by the order appointing him, authorized to continue the publication of the newspaper. The receiver so appointed entered upon the discharge of his duties as such and continued the publication of the paper until the 16th day of June, 1894, when the property of the company, which had been transferred by the trust deed to the trustees, was, under an order of the court, sold to one Crawford for the sum of $65,200, and was by him transferred to the plaintiff in this action. It further appears that, at the time the receiver was appointed, the defendant had procured orders for advertisements from a large number of individuals, which had not at that time been published in the paper. He thereupon, after advising the receiver as to the provisions of the contract existing between him and the company, gave him notice in writing that the contract was in full force and that

he should insist upon its full performance. The receiver replied, in writing, saying he should not recognize the contract; that while he considered it his duty to carry out the advertising contracts which were in the course of completion in the current publication of the paper, he should not recognize the defendant thereafter, and that on all business thereafter handled collections would be made by the receiver direct, instead of by the defendant. The defendant then replied refusing to admit the claims of the receiver. Thereafter, the receiver continued the publication of the newspaper and published therein the advertisements obtained by the defendant and delivered to the paper prior to the appointment of the receiver. The value of these advertisements amounted in the aggregate to $3,902.74, which sum the defendant collected from the persons from whom he had procured the advertisements and now refuses to pay the same over to the receiver or to the plaintiff in this action, claiming the right to hold and apply the money in satisfaction of his commissions and the loan made by him to the company under his contract of January 3d, 1891, the amount of which, at that time remaining unpaid, exceeded the sum of $20,000.

After the facts had been submitted to the court the defendant moved for a dismissal of the complaint. This was refused and he then moved for a direction of a verdict in his favor. This was also refused, and then, upon motion of the plaintiff, a verdict was directed in its favor for the full amount of his claim. Exceptions were taken by the defendant to each of the rulings of the court.

In determining these questions it becomes important to first ascertain the meaning and the effect of the contract entered into between the defendant and the Memphis Appeal Company. As we have seen, the two letters constituting the agreement bear the same date and were evidently intended to be read and considered together. So reading them they constitute one contract and not two independent agreements. In the first place the defendant Beckwith appears to have loaned the Memphis Appeal Company the sum of $30,000

with interest at six per cent, to be paid in monthly install-
ments out of moneys coming into his hands from advertise-
ments published in the Memphis Appeal Company's paper in
amounts of $1,000 per month until the loan was paid in full,
and in consideration for this loan the Memphis Appeal Co.
agreed to appoint the defendant their agent for the period of
five years to procure advertisements for their paper in a ter-
ritory specifically designated. He to fix the rates, collect the
bills, render monthly statements and have for his compensa-
tion 25 per cent commission. The clause of the agreement
giving to the defendant the right to collect all of the bills
was evidently intended to give him the control of the proceeds
resulting from the advertisements so that he could apply the
same upon his loan to the amount of $1,000 per month; and
this provision of the contract we think was in the nature of
an equitable pledge of the receipts for that purpose. When
the receiver of the corporation was appointed he took posses-
sion of the assets and business subject to the liens and obligations
of the corporation. As receiver he could refuse to carry out or
execute the contract of the defendant, and by so doing, leave
him with his claim for damages for a breach of the contract; or
if he saw fit, he could carry out and perform the contract of
the corporation and thus prevent any claim for damages. He
could not, however, perform the contract and receive the bene-
fits without satisfying the obligations of the company there-
under. When, therefore, the receiver accepted and published
the advertisements procured by the defendant, he must be
deemed to have done so under the contract which the defend-
ant had with the corporation, and under that contract the
defendant had the right to collect the moneys accruing for
such advertisements and to retain out of such collections a
sum not to exceed $1,000 per month to be applied upon the
loan. All collections exceeding that amount belonged to the
receiver. But inasmuch as the collections did not exceed
that sum per month, there was nothing going to the receiver
which was recoverable in this action.

It is said that the receiver, having published the advertise-

ments and incurred the expenses incident thereto, had earned the amount which the advertiser agreed to pay, and that he, therefore, was entitled to all of the proceeds therefrom. The Appellate Division appears to have entertained this view, but this leaves out of consideration all of the rights which the defendant had acquired under his contract, and all the time and money expended by him in procuring the contracts for advertisements from all sections of the country covered by his agency. That court was also of the opinion that *Southern Express Company* v. *W. N. C. Railroad Company* (99 U. S. 191) was an authority in support of its position, but to our minds it has no application. In that case the express company had loaned the railroad company the sum of $20,000 and the railroad company had agreed to carry freight for the express company, applying the sums due for transportation upon the loan monthly. The railroad company passed into the hands of a receiver and the express company sought to compel a specific performance of the contract by the receiver. The bill was dismissed, and we think properly. As we have already seen, the receiver had a right to refuse to carry out or execute the contract of the corporation whose assets had come into his hands. But, as we have already shown, he cannot adopt and perform the contract and receive the benefits without also incurring the obligations. If the receiver of the railroad company had concluded that it was for the best interests of the estate to carry out the contract with the express company, a very different question would have been presented. To the same effect is *Central Trust Company* v. *Marietta & N. G. R. Co.* (51 Fed. Rep. 15), also relied upon by the Appellate Division.

But one other question requires consideration here, and that is as to whether the rights of the defendant have been settled by previous litigation in this case.

As we have already shown, an action was brought by the trustees under the deed in trust to procure a judgment directing them to carry into effect the transfer to them, in which action a receiver was appointed. The defendant Beckwith

was made a party to this action, and he subsequently procured a removal of the action, so far as he was concerned, into the Circuit Court of the United States. Thereafter several general creditors brought actions against the Memphis Appeal Company for the purpose of winding it up as an insolvent corporation. Subsequently all of these actions were consolidated and proceeded to trial in the Chancery Court of Shelby county, Tennessee, which resulted in a decree which was also entered as a decree in the Circuit Court of the United States. Under this decree it was adjudged that the levy of the execution in the case of Toley-Williams Manufacturing Company et al. created no lien upon the assets of the company, and the court, therefore, dismissed the cross-bill of Samuel C. Beckwith. It further appeared in the decree that the prayer of Samuel C. Beckwith for leave to appeal from so much of the decree as adjudged that he had no lien upon the fund in court for the payment of his judgment against the Memphis Appeal Company was granted upon his executing a bond for costs in the sum of $1,000. The decree contained numerous adjudications as to the rights of other parties, but nothing further affecting the rights of the defendant. A review was had in the Supreme Court of Tennessee, in which the decree was in part reversed and modified, and, in other respects, affirmed. There was nothing, however, in the reversal or modification that appears to affect the defendant, Beckwith. None of the pleadings are set forth in the record, so that we are left without information as to the precise issues raised and tried. We are not advised as to the interest Beckwith had in the execution levied by the Toley-Williams Manufacturing Company. It is quite apparent, however, that it had no connection with the matter involved in this litigation. We are not advised as to the character or the amount of the judgment which he sought to have established as a lien upon the fund in court. Possibly he had obtained a judgment against the Memphis Appeal Company for the amount of his loan and that he sought to have this paid out of the fund in the hands of the receiver, but this

43

is merely a suggestion based upon the allowance of his appeal, and does not appear as a fact in anything that we have been able to discover in the record. We think, therefore, that the judgment of the Court of Chancery of the state of Tennessee does not affect the rights of the defendant in this action. It did not adjudicate nor attempt to determine his right to the moneys received by him for advertisements inserted in the paper by the receiver after his appointment. Under the judgment the purchaser became entitled to all the moneys due and owing to the receiver by reason of the publication of the paper, but moneys that did not belong to the receiver, or to which he was not entitled, did not pass to the purchaser, and we find nothing in the prior decree that is an adjudication upon this question.

We think the judgment should be reversed, and, inasmuch as the facts are established by the written stipulations of the parties, final judgment should be ordered in favor of the defendant dismissing the complaint, with costs in all courts.

PARKER, Ch. J., GRAY, BARTLETT, MARTIN, VANN and WERNER, JJ., concur.

Judgment reversed, etc.