[Civil No. 2712. Filed October 23, 1928.]

[271 Pac. 25.]

WAYNE RITTER, Plaintiff, v. ARIZONA CATTLE COMPANY, a Corporation, Defendant.

FEN S. HILDRETH, Receiver, Defendant-Appellant, v. STOCKGROWERS' FINANCE CORPORATION, a Corporation, Plaintiff-Appellee.

Messrs. Jennings & Strouss, Mr. J. L. B. Alexander and Mr. Robert McMurchie, for Appellant.

Mr. Hugh M. Foster and Mr. Graham Foster, for Appellee.

ROSS, C. J.—Fen S. Hildreth, on August 2, 1923, upon the application of the plaintiff, a general creditor, in the case of *Wayne Ritter* v. *Arizona Cattle Company,* instituted on that day in the superior court of Maricopa county, was appointed receiver of the assets and property of the defendant company. He immediately took possession of such property, consisting of approximately five thousand head of range cattle, ranges, ranches and watering places, and held possession until July 14, 1924, when he sold and delivered, with the approval of the court, the entire outfit to the Stockgrowers' Finance Corporation (hereafter referred to as the Finance Corporation) for the sum of $100,000.

For reasons hereafter stated the receiver did not make his final report and ask to be discharged when relieved from the duty and burden of looking after the property by reason of its sale, but postponed that report and request until November 1, 1926. The final report showed expenditures by the receiver of $26,236.93, and, upon a hearing, at which the Finance Corporation appeared and protested, the court disallowed thereof the sum of $14,449.13. The hearing was had upon the record and files of the case and the oral protest of the Finance Corporation. This appeal is from the order of disallowance.

Before discussing or stating the legal aspects of the case, we will outline, as best we can, the salient facts as they appear from the record.

At the time of the appointment of appellant as receiver the Finance Corporation held the note of the defendant Arizona Cattle Company for $100,000, secured by a first chattel mortgage covering all of the above-mentioned property, and such note and mortgage were of record and past due. The known debts of the Arizona Cattle Company, secured and unsecured, were $237,000, and the assets of the insolvent were estimated by the receiver to be $158,000.

The receiver was appointed such without the knowledge or consent of the Finance Corporation, and as soon as it obtained information of the appointment, to wit, in September, 1923, it asked of the court and was granted leave to foreclose its mortgage, which it proceeded to do in a separate action. It also offered to take possession of the property and care for it at its own expense. This offer was not accepted. In the foreclosure suit the receiver filed an answer raising the question of the mortgage's validity, and the superior court held it was void but gave the Finance Corporation judgment for the face of the note and interest, amounting to $118,755, and costs. From this judgment an appeal by the Finance Corporation was taken, and the Supreme Court, on September 16, 1926, reversed the judgment, held the mortgage valid, and directed its foreclosure. *Stockgrowers' Finance Corporation* v. *Hildreth et al.*, 30 Ariz. 505, 249 Pac. 71.

An inspection of the records on file shows that much of the money expended by the receiver was not for the care and preservation of the mortgaged property, but that it was expended in trying to defeat the mortgage. Just to mention some of the larger items: The receiver paid $8,500 to attorneys and was allowed for his personal services $3,600; also other sums for court costs incurred and other expenses attendant upon the foreclosure litigation. It is also shown by the record that the entire estate upon a sale did not realize enough to pay the Finance Corporation's mortgage, and that the receiver, although he tried hard to raise money with which to care for the property, could get no one except the mortgagee to make any advances for that purpose; that at the first offer of receiver's certificates no purchasers were found. The receiver then actually negotiated a private sale of the ranches, ranges, and watering places, reserving their use to February,

1924, for the sum of $10,000, and the carrying out of this sale was prevented only when the Finance Corporation offered to take receiver's certificates and advance money to care for and conserve the property. These advances by the mortgagee, on property already mortgaged to it for its full value, can be explained only on the theory of protecting its mortgage security from loss or waste. Finally, after advancing large sums, it offered the receiver $100,000, including advances, for the property covered by mortgage, the money to be held subject to its mortgage lien and to be repaid to it in the event the Supreme Court should hold the mortgage valid. This offer was approved by the court and carried out on July 14, 1924. The $100,000, less advances theretofore made, were paid to the receiver, and the cattle outfit was turned over to the Finance Corporation on or about that date.

The trial court in its findings, after reciting the existence of the $100,000 mortgage in favor of the Finance Corporation and after stating that the mortgagee bought the property from the receiver subject to its mortgage, stated:

"That the said Fen S. Hildreth, as such receiver, received said purchase price of said property from said Stockgrowers' Finance Corporation charged with the payment of said chattel mortgage indebtedness due and owing from said Arizona Cattle Company to said Stockgrowers' Finance Corporation in preference, and prior to the payment, of all expenses of said receivership, save and except costs and expenses incurred by said receiver in the preservation of said mortgaged property prior to said sale."

The court found that the receiver had expended during his administration the sum of $26,236.93, and that of this sum $11,787.80 were for "costs and expenses incurred by said receiver in the preservation of the said mortgaged property prior to said sale," and that the "remainder of $14,449.13 has been paid

out by him to defray costs and expenses of the said receivership other than expenses incurred in the preservation of said mortgaged property.''

The order appointing the receiver, so far as here material, authorized him to ''take immediate control and supervision of all ranches, cattle, horses, and real and personal property of every kind and description belonging to said corporation wherever situate in the state of Arizona, and to manage and conserve said property, and to take all necessary measures for its proper protection and preservation.''

We have here this situation: The court, at the instance of an open unsecured creditor of an insolvent corporation, with all its assets mortgaged to their full value, appointing a receiver thereof without the knowledge or consent of the owner and holder of the mortgage, and such receiver taking possession of such assets and out of the proceeds thereof paying, not only the costs and expenses of caring for and preserving the property, but out of such proceeds paying large sums in an effort to defeat the mortgage lien. In other words, the receiver used the mortgagee's property to preserve it and used the mortgagee's property in an effort to show that it was not the mortgagee. The former was permissible but hardly the latter. If the open creditor or creditors wanted to expend their money or the assets of the insolvent, subject to the payment of their debts, in an effort to defeat the Finance Corporation's mortgage, that they might well do, but the receiver owed the same duty to the secured creditors as to those whose debts were not secured. It was no part of his duty to take sides as between these any more than it would have been the duty of the debtor, in the absence of a receivership, to take sides between them. 23 R. C. L. 108, § 118. There was never any question as to the legality of the

mortgage as between the mortgagor and the mortgagee or its assigns (*Stockgrowers' Finance Corporation* v. *Hildreth et al., supra*), and since the receiver stepped into the mortgagor's shoes he was as duty bound to acknowledge its validity and binding effect as the mortgagor was. 34 Cyc. 191. A defeat of the mortgage lien would not have benefited anyone but the general creditors; yet the receiver assumed to appropriate some of the property covered by the mortgage to secure a court declaration that the mortgage was, for some technical reason, void. The effect of this conduct of the receiver was to compel the mortgagee to pay lawyers' fees and court costs and other expenses in an effort by the receiver to defeat his own mortgage. This was a violation of one of the commonest and most revered rights known to an American citizen. It is prohibited by the federal and state Constitutions. The state Constitution forbids the taking of private property, except for private ways and public uses, and then only after compensation has been paid or provided for. If the insolvent had property other than that mortgaged, or if after the mortgage was satisfied there was left a balance subject to the claims of general creditors, the payment of fees to lawyers rendering valuable services to the receiver might well have been approved. At least nobody but the general creditors could have objected. The mortgagee would not be concerned except as to any deficit after applying the proceeds to his mortgage.

But appellant contends the orders allowing the items rejected by the court, on hearing the receiver's final account, were all appealable orders under paragraph 1227, Civil Code 1913; that if the Finance Corporation was dissatisfied with such allowances it should have appealed therefrom to this court within 60 days after their entry; and that, having failed

to do so, the orders had become *res judicata* before the receiver's final report was passed upon.

Orders made in the course of the administration of an insolvent's estate by a receiver are not specifically named in paragraph 1227, *supra,* as appealable, and of course the right of appeal is statutory. We think that such orders are interlocutory and subject to revision or change, for good reason, upon the hearing of the final account of the receiver. Nor do we think the approval by the court of monthly or yearly reports in which such expenditures are shown is final and appealable. If during the administration of an estate each order of allowance, whatever its nature, may be appealed, then the number of appeals might and could be almost numberless. Yet if one is appealable it would seem all should be. The orders show on their faces, or at least some of them, that they were not intended as final. For instance, on July 14, 1924, and after the receiver had surrendered the estate to the purchaser, Finance Corporation, the court ordered ''that said Fen S. Hildreth is allowed the sum of Three Thousand Dollars ($3,000.00) to be applied on account of his compensation for services rendered . . . and the said Receiver . . . is allowed the sum of Five Thousand Dollars ($5,000.00) to be paid to his attorney . . . and applied on account for services rendered the said Fen S. Hildreth, Receiver. . . . '' This was certainly a provisional or interlocutory order.

A very similar question arose in *Heinze* v. *Butte & Boston Consolidated Mining Co.,* (C. C. A.) 129 Fed. 337, and it was there held that neither an order approving monthly reports of a receiver nor one directing him to pay attorneys' fees, made before the coming in of his final account, is a final order and appealable. The court, in giving its reasons for such conclusion, said:

"The order approving the receiver's monthly accounts, which is the subject of one of the appeals now under consideration, was not an order made upon a matter collateral to the partition suit or to the receivership of the fund in controversy, nor do we think it was a final judgment. The receiver, being an officer of the court appointed to preserve and manage the property which was the subject of the suit, in accordance with his duty as such officer, filed his monthly accounts for the purpose of informing the parties litigant and the court of his management of the property and his receipts and disbursements of the fund, and for the further purpose of obtaining the sanction of the court therefor, as well as for the allowance of his monthly compensation. Upon the report so filed an order was obtained expressing the judgment of the court upon the matters so presented. Such an order made during the progress of the receivership, and before the final account is, we think, clearly interlocutory. If such an order be held appealable, it follows that every order directing the action of the receiver in the disbursement of any portion of the funds in his hands, and each order approving his monthly accounts, may be made the subject of an appeal, and the matters involved in the receivership may be brought into this court piecemeal."

Paragraph 1230 of the Civil Code provides:

"Upon an appeal from a final judgment the supreme court may review any intermediate order involving the merits and necessarily affecting the judgment."

We think orders approving current accounts of the receiver or authorizing expenditures by him fall within the terms of this statute and may be reviewed only on appeal from the final judgment approving or disapproving the final account of the receiver. In discussing this provision in *Miami Copper Co.* v. *Strohl,* 14 Ariz. 410, 130 Pac. 605, we said:

"All orders made in cases before judgment, other than those enumerated, are therefore unappealable, for, as the manner of taking an appeal is purely stat-

utory, the right cannot be extended to cases not included within the statute. And it follows that such nonappealable orders involving the merits and necessarily affecting the judgment may, under the terms of the statute, be reviewed on appeal from the judgment alone when properly presented in the record.''

In *Rochat* v. *Gee,* 91 Cal. 355, 27 Pac. 670, the court suggested the usual practice with reference to receiver's accounts, as also why the appeal is from the final order of settlement of the account, in this language:

''The final account will refer to previous reports filed, and when that is settled, any one aggrieved will be fully protected by an appeal, either from the final order or from the judgment. It may happen that those who object to the acts of the receiver during the first part of his administration will be entirely satisfied with the general result, and have no objection to the approval of his final account of the whole matter.''

Appellant argues quite strenuously that there is no evidence in the record showing that the receiver's expenditures were not for the care and protection of the insolvent estate. On November 14, 1924, there was an order entered allowing a ''special attorney'' the sum of $2,000, based upon a petition showing that such services were rendered in the foreclosure suit of the Finance Corporation as assistant ''counsel for the receiver in the preparation of the case for trial, for appearing and assisting on the trial and for assisting in the preparation of the brief resulting favorably to the contentions of the receiver.''

In the same order, without a petition or notice to the creditors, the court ordered that:

''In addition to the five thousand dollars ($5,-000.00) heretofore allowed him (the regular attorney) the sum of Fifteen Hundred Dollars ($1,500.00) (be allowed) on account for legal services heretofore rendered.''

Many other items are shown in the receiver's accounts that could have been expended for no other purpose than an effort to defeat the mortgage of the Finance Corporation, and the court found from the record it had before it that "$14,449.13 has been paid out by him to defray costs and expenses of said receivership other than expenses incurred in the preservation of said mortgaged property," and we feel bound by such finding.

We will add that the making of allowances to receivers and attorneys without notice to all interested parties and a hearing thereon was irregular and the practice should not be encouraged. *Ruggles* v. *Patton,* (C. C. A.) 143 Fed. 312.

We are of the opinion that the court's order approving the final account, where it appeared the expenditure was for the purpose of preserving the property, was proper and legal, on the theory that if the receiver had not cared for the property the mortgagee would have been required to do so at its own expense.

We are also of the opinion that the court correctly refused to allow the receiver his claimed allowance and the attorneys' fees and court costs, since it appears all of these were expended in an effort to defeat the mortgage lien of the Finance Corporation, and not to preserve the property. The order directing the receiver to pay into court the sum of $14,449.13 is affirmed.

McALISTER, J., concurs.

LOCKWOOD, J., Specially Concurring.—There are certain principles of law which I think should govern in the decision of this case. I state them as follows:

The receiver appointed by the court takes only the interest of the insolvent in the property. *Fourth St.*

*Nat. Bank* v. *Yardley,* 165 U. S. 634, 41 L. Ed. 855, 17 Sup. Ct. Rep. 439; *In re Hamilton,* 26 Or. 579, 38 Pac. 1088. Any liens existing are valid against the receiver to the same extent and in the same manner as if the property were still in the possession of the insolvent. *Petaluma Savings Bank* v. *San Francisco Superior Court,* 111 Cal. 488, 44 Pac. 177; *Com. Pub. Co.* v. *Beckwith,* 167 N. Y. 329, 60 N. E. 642; *Fourth St. Nat. Bank* v. *Yardley, supra.*

A lien, except in rare cases not similar to the present one, is superior to any of the expenses of the receivership, except such as may be necessary for the preservation of the property, or beneficial to the lienholder. *Louisville, E. & St. L. R. Co.* v. *Wilson,* 138 U. S. 501, 34 L. Ed. 1023, 11 Sup. Ct. Rep. 405; *Buckwalter* v. *Whipple,* 115 Ga. 484, 41 S. E. 1010; *Lane* v. *Washington Hotel Co.,* 190 Pa. 230, 42 Atl. 697; *McCormick* v. *Elsea,* 107 Va. 472, 59 S. E. 411; *Link Belt Co.* v. *Hughes,* 174 Ill. 155, 51 N. E. 179.

Ordinarily a receiver acting under an order of the court is protected in the payment of money, even if such order was erroneous and subsequently reversed. *Platt* v. *N. Y. & S. B. R. Co.,* 170 N. Y. 451, 63 N. E. 532; *Coe* v. *Patterson,* 122 App. Div. 76, 106 N. Y. Supp. 659; Id., 108 N. Y. Supp. 1127; *Hovey* v. *McDonald,* 109 U. S. 150, 27 L. Ed. 888, 3 Sup. Ct. Rep. 136. To protect him, however, the order must have been within the jurisdiction of the court, for an order void on its face protects no one. *Jowers* v. *Kirkpatrick Hdw. Co.,* 21 Ga. App. 751, 94 S. E. 1044; *Fischer* v. *Langbein,* 103 N. Y. 84, 8 N. E. 251; *Jefferson* v. *Gallagher,* 56 Okl. 405, 150 Pac. 1071; *Andrus* v. *Blazzard,* 23 Utah 233, 54 L. R. A. 354, 63 Pac. 888.

What are the facts to which these principles apply?

Respondent herein was the holder of a valid mortgage on most of the property taken over by the

receiver, composed chiefly of cattle and leases on grazing lands. It did not join in the application for a receiver, and made no claim against the estate, relying at all times on its mortgage. When the receiver was appointed it offered to take over the mortgaged property and pay the expenses of its preservation, but the court refused to permit such action and ordered part of it sold by the receiver to pay expenses. This last-mentioned property was of such a nature that its sale would probably have compelled an immediate forced sale of the mortgaged cattle at a great loss. To avoid this respondent agreed to purchase receiver's certificates, the proceeds of which, by the terms of the order of the court authorizing the purchase, were to be used "for the operation of the ranch as a going concern, and for the conservation of the property . . . the money thus obtained to be deemed an expenditure by the Stock Growers' Finance Corporation for the preservation of the property." Some $14,000 worth of such certificates were eventually purchased by respondent. Later it purchased all the assets of the insolvent except a certain town lot. It was expressly stipulated that the purchase price should be held by the receiver subject to a decision as to the validity and scope of respondent's mortgage.

The receiver, during his administration, made a determined effort to defeat respondent's mortgage, most, if not all, of the attorneys' fees, and other items involved herein, except the receiver's fees, being for that purpose. He was unsuccessful in the attempt, the mortgage being held valid by this court. *Stock Growers' Finance Corp.* v. *Hildreth,* 30 Ariz. 505, 249 Pac. 71. He presented various partial reports and secured orders allowing him credit, among other things, for attorneys' fees of $8,500 and receiver's fees of $3,600, besides other expenses not incurred in the preservation of the *corpus* of the mortgaged prop-

erty. When his final report was presented he asked for an allowance, including the items approved in the partial accounts as above, of some $26,000 for expenses. The court found that of that amount only some $11,000 was expended for the preservation of the mortgaged property, and that only the amount so expended could be charged against the proceeds of such property until the mortgage was fully satisfied. Since the only money ever realized by the receiver came from the sale of certificates as above set forth, and from the sale of the mortgaged property, this in effect compelled him and his bondsmen to make good everything he had paid out above the $11,000 allowed by the court as above.

From the foregoing statement of facts and legal principles it is obvious that the orders of the court approving the expenditure by the receiver of any money not used in the preservation of the mortgaged property, if such orders be construed as directing the proceeds of such property to be used therefor, were at least erroneous. But an order merely erroneous, as we have seen, protects the receiver who acts in good faith. It is only the void order which affords no protection. Were the orders in question void?

A void order or judgment, as distinguished from one merely erroneous or voidable, is one made without jurisdiction. What, then, is necessary to confer jurisdiction on a court? Three things must concur: (a) Jurisdiction of the persons of the litigants; (b) jurisdiction of the subject matter of the action; and (c) jurisdiction to determine the particular question determined and *to render the particular judgment awarded.* If any one of these be lacking, a judgment or order is void, and not merely voidable or erroneous. 33 Cyc. 1072, pars. 34–37, and cases cited.

In the case at bar the court unquestionably had jurisdiction of the persons of the litigants, and of the subject matter of the litigation. It was, however,

in my opinion, utterly lacking in jurisdiction to make the particular orders relied on by appellant. Since the money used was proceeds of the mortgaged property, or money advanced on receiver's certificates for the sole purpose of preserving the property, and since the amounts surcharged were not used in the preservation of the property, the court had no more jurisdiction to make an order approving their payment from such proceeds than it would have had if the receiver had secured the funds in question by converting the property of a stranger to the record, or robbing a bank. To hold to the contrary would, as is pointed out in the majority opinion, deprive respondents of their property without due process of law. This cannot be done.

I therefore concur in the affirmance of the judgment on the ground that the orders of the court approving the allowance of the items surcharged in the final account, if they are to be construed as authorizing the payment of such items from the proceeds of the mortgaged property, were without jurisdiction and void.