ERWIN GLASER, complainant,

*v.*

ACHTEL-STETTER'S RESTAURANT, INCORPORATED, defendant.

JUNIOR COMPANY AND SENIOR CORPORATION OF NEW JERSEY, appellants,

*v.*

· HARRY G. HENDRICKS, receiver of Achtel-Stetter's Restaurant, Incorporated, appellee-respondent.

[Argued May term, 1929.  Decided February 10th, 1930.]

*Mr. Robert Carey, Jr.,* for the appellants.

*Mesrs. Pomerehne, Laible & Kautz* (*Mr. Henry Pomerehne,* on the brief), for the respondent.

The opinion of the court was delivered by

KALISCH, J.

There are two appeals from two orders of the court of chancery, the subject-matter of the orders being so inter-related that the appeals were agued together.

The appeal of the Junior Company & Senior Corporation is from an order made on November 13th, 1928, by the court of chancery, in a suit wherein Erwin Glaser was complainant and Achtel-Stetter's restaurant was the defendant, overruling and setting aside exceptions filed to the report of the receiver, and affirming said report and in allowing the receiver, for his services, the sum of $2,500, and in allowing counsel for receiver $2,500, and counsel for complainant the sum of $500.

The legal propriety of making the allowances referred to, are challenged by the appellants.

The other appeal of the Junior Company & Senior Corporation is from an order, discharging a rule to show cause on November 13th, 1928, by the court of chancery, which order to show cause was entered on August 29th, 1928, and was directed to Hendricks, receiver, requiring him to show cause why he should not be compelled to pay to the Junior Company & Senior Corporation rents due and owing for certain premises in Newark, up to and including April 6th, 1928, and why he should not be compelled to turn over to the complainants the proceeds of the sale of chattels, &c.

The printed case does not contain a copy of the complainant's bill of complaint. The order made on February 20th, 1928, by Vice-Chancellor Church, seems to indicate that a bill was filed by creditors and stockholders of the Achtel-Stetter's restaurant, but the proceedings in the cause disclose that the bill was filed by a creditor of the corporation. The order of the court of chancery, based upon the bill, reads *inter alia,* that the corporation "was unable to meet its current obligations or to continue its business with safety to the public or advantage to its stockholders and its business has been, and is conducted at a great loss and greatly prejudicial to the interest of its creditors and its stockholders, and that a receiver should be appointed to take charge of and discover all of its assets and properties," &c.

The financial condition of the corporation at the time of the application for the receiver was as follows: Debts receivable, $212.14; furnishings and fixtures, $5,494; leasehold interest, subsequently sold by the receivers for $1,000, so that all the live assets of the corporation totaled $6,706.14.

There was due from the corporation preferred claims, viz.: Taxes, $805.70; two months rent due of $8,409.60 and for which sum a distraint was made and existed upon the goods and chattels of the insolvent corporation before the application for a receiver was made. The general indebtedness due and owing to unsecured creditors amounted to $20,425.79. Thus it was apparent at the time of the application for a receiver, that neither creditor nor stockholder could in any

wise be benefited by such proceedings, but rather prejudicially harmed, since there were not sufficient assets to pay the preferred debts. The spirit of the statute relating to the appointment of a receiver aims to accomplish, by such appointment, the preservation of the interest of the stockholders and creditors; therefore, when it appeared, as it did in this case, that the appointment of a receiver would only add an additional burden upon the burden which already weighed heavily upon the estate, and tended to eat up all the available assets by receivership expenses, no receiver should have been appointed, and the parties should have been left to pursue their remedy at law. The appointment of a receiver is not a matter of absolute legal right, and, therefore, sound discretion should be exercised by the court before any such appointment is made. It is highly inequitable to appoint a receiver where it appears that the ultimate result will be a sacrifice of the assets of the corporation wholly to the profits of counsel and receiver and to costs and expenses of such receivership.

The fact that there were preferred claims of creditors which would more than exhaust the assets of the estate, was, in itself, sufficient to stay the intervention of the court of chancery in the matter.

Equity follows the law and does not supersede it. Its mission is to soften the rigor of the law and provide a remedy where, without the interference of a court of equity, the person aggrieved would be remediless.

The Corporation act which provides a remedy and method of procedure in a case of insolvency of a corporation prescribes that any creditor or stockholder may, by petition, &c., setting forth the facts and circumstances of the case, apply to the court of chancery for a writ of injunction and the appointment of a receiver, &c., and that the court upon being satisfied by affidavit or otherwise of the sufficiency of said application, and the truth of the allegations contained in the petition, &c., and upon notice, &c., may proceed in a summary way to hear the affidavits, proofs and allegations which may be offered on behalf of the parties, and if upon such inquiry it shall appear to the court that the corporation has become

insolvent and is not about to resume its business in a short time thereafter with safety to the public and advantage to the stockholders, appoint a receiver, &c.

Keeping this legislative declaration in view, it is obvious .from the facts which were divulged, or could have been ascertained upon inquiry, at the time the application for a receivership was made and granted, that the facts of the instant case did not present a case for relief within the section of the Corporation act referred to.

No appeal was taken from the order appointing the receiver. It appeared early in the pendency of the receivership that nothing would be realized from the assets which could pay in full, or even a substantial part thereof, of the preferred claims, which admittedly existed, and we, therefore, think, that when such a condition manifests itself it is the duty of the court to discharge the receiver and dismiss the bill.

Notwithstanding that the receiver was confronted with a hopelessly insolvent estate, the assets being insufficient to pay preferred debts, he, nevertheless, without any experience in the restaurant business, and with the example before him, of an experienced restaurateur being unable to make the business pay, and without any order of the court to carry on the business, he conducted the business for one week, which undertaking resulted in a loss of $1,472.56. The receiver not having been authorized by the court to conduct the business, as a matter of course, his responsibility for such an unauthorized act rested upon him personally, and he should, therefore, have been made to sustain the loss resulting therefrom.

There were exceptions, as said, taken by the appellants to the final report of the receiver. We will deal with them later on. A petition was filed on March 9th, 1928, by the receiver, asking for the advice and direction of the court as to whether under the circumstances set forth in the petition, the assets of the corporation shall be sold at public or private sale, and whether the receiver shall sell the same as a whole or in parcel and free from the liens of distress levied against the same. This petition was followed by an order filed in the court of chancery, March 9th, 1928, authorizing and directing the

receiver "to sell all the right, title and interest in and to all the goods, chattels, assets and appurtenances of the defendant company at public or private sale, for the highest and best price that the same will bring in cash, as an entirety or in parcels at the discretion of the receiver and free and discharged from any and all liens, distresses and distrains for rent levied thereon, such liens, if any, to attach to the proceeds of such sale or sales as the court may hereafter determine."

The state of the case left no doubt that the landlords had a lien on the goods and chattels by virtue of the statute. They could not be lawfully deprived of the legal effect of such lien unless there was a prior lien which, if paid, would wipe out any property upon which the landlord's lien could operate. It is therefore difficult to see on what theory the court of chancery, in the present case, where it appeared that there was no equity remaining to preserve, after the sale of the goods and chattels, could properly have ordered such goods and chattels to be sold free and discharged from any and all liens. The court could not lawfully deprive the lienor of enforcing his rights against the assets without divesting him of a vested right. *Woodside* v. *Adams, 40 N. J. Law 417; Wood* v. *McCardell Carriage Co., 49 N. J. Eq. 433.*

In *Lane* v. *Washington Hotel Co., 190 Pa. 230; 42 Atl. Rep. 697,* a receiver was appointed of the hotel and goods in it, subject to the landlord's lien for rent, were sold by him. *Held,* "that the landlord had a lien for rent on the funds raised by the sale and it could not be reduced by any part of expense of the receivership." See *Central Trust & Savings Co.* v. *Chester County Electric Co., 80 Atl. Rep. 801* (at *pp. 802, 803*).

Now as to the exceptions taken to the final report made by the receiver, and allowed by the court:

The item of $590.55 allowed to the auctioneer for his services at the sale, should have been disallowed. The duty of conducting the sale devolved upon the receiver. His services as such include the duty to make the sale, and he cannot, therefore, properly charge that sum against the assets of the estate. We also think that the item of $1,729.01 for adver-

tising the sale, the proceeds of which sale realized $6,706, shocks the sense of justice. The item of $1,729.01 includes expenses for advertising the sale, $500 for auditing books and $300 for appraisers.

In the posture in which the insolvent estate was at the time the receiver took possession, the incurring of these expenses cannot be legally justified.

The allowance of $2,500 to the receiver is disapproved. We think under the circumstances, as developed during the conduct and course of the receivership, the receiver rendered no such beneficial service either to the stockholders or creditors, which warranted the allowance made to him by the court of chancery. An allowance to the receiver of $300, measured by the value of his services is ample. We are also of the opinion that counsel for the receiver who was allowed, in the court below, $2,500, was, and is not entitled to any such allowance for the same reason as has been indicated in the case of the receiver. The allowance, therefore, made to counsel of the receiver in the court below is disapproved. We think that an allowance of $150 is ample under the circumstances of the case.

The allowance of a counsel fee of $500 to complainant's counsel is disallowed, since it appears from the facts developed in the instant case that the bill was not filed in the interest of creditors or stockholders.

Our direction, therefore, is, that the funds in the hands of the receiver be devoted and applied to the payment of the taxes of 1927 and 1928, due to the city of Newark, and to the payment of the landlords' liens, so far as the funds in the hands of the receiver will permit, after deducting the taxed costs of court. See *Conover* v. *West Jersey Mortgage Co.,* *96 N. J. Eq. 441.*

The orders of the court of chancery appealed from will be modified, so as to meet the views expressed in the opinion.

*For modification*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, KALISCH, CAMPBELL, LLOYD, CASE, BODINE, VAN BUSKIRK, McGLENNON, KAYS, HETFIELD, DEAR, JJ.  13.