The Film Automatic Machine Corporation, a corporation of this state, was formerly engaged in the business of assembling automatic film cutting and splicing machines. Parts of these machines were made by other manufacturers. The corporation leased the completed machines to various film exchanges on a weekly rental basis. Complainant was appointed receiver of the corporation by the United States District Court for the District of New Jersey.
The bill of complaint was filed to set aside certain transactions involving the corporate property.
The first cause of action is to set aside a distraint levied on the corporation's chattels by its landlords, Edwin H. Maguire etal., and to set aside the sale under the levy. The alleged reasons for the relief is that the distress was inequitable, illegal, excessive, unreasonable and a result of a collusive *Page 154 
agreement to effect an illegal and improper preference in fraud of creditors.
It is not disputed that on March 16th, 1938, the Film Company was indebted to its landlords, the Maguires, in the sum of $500 for rent for the months of December, 1937, and January, February and March, 1938. The landlords' bailiff, on said March 16th, levied on the assets of the corporation consisting of machines and tools. On April 5th, 1938, the April rent having become due, a second distraint was made for the additional sum of $125. The bailiff held a sale on May 2d 1938, under the first levy and the defendant Bloomfield Tool Corporation bid in the goods and chattels at said sale for $548.20. The sale was made subject to the second levy. Thereafter the Bloomfield Tool Corporation paid the landlords an additional $125 for a release from the lien of the second levy. The bailiff's bill of sale purports to convey title to more machines than were actually on the premises at the time of the levy. The Bloomfield Tool Corporation concedes that it acquired no title to machines which were not on the premises of the Film Company at the time.
From the evidence I am satisfied that the distraint and sale was not the result of any collusive agreement between the landlords and the Bloomfield Tool Corporation or the Film Company which might be construed in fraud of creditors. The landlords were privileged to proceed against the tenant either under R.S.2:60-229 et seq. or under R.S. 2:58-1 as supplemented by R.S.2:58-34. They chose to proceed under the latter statute which they were privileged to do. Blanos v. Eastwood Realty Co.,116 N.J. Law 1. A landlord's claim for unpaid rent is not a lien by virtue of section 4 but will ripen into a lien when a distraint is actually made. Franz Realty Co. v. Welsh, 86 N.J. Eq. 228.
A landlord's lien, so perfected, had priority to the claims of general creditors provided the distraint was made prior to the receivership. Glaser v. Achtel-Stetter's Restaurant, Inc.,106 N.J. Eq. 150; Whitehead v. Whitehead Pottery Co., 115 N.J. Eq. 257.
I believe the landlords acted in good faith.
The next question is whether or not the restraint was reasonable. An expert called by the receiver testified that at *Page 155 
a forced sale the machinery and equipment would have brought $6,300 as of the date of the distraint. He also testified that the machinery and equipment would have brought more than said amount in the spring of 1938. The former president of the Film Company, who testified on behalf of the complainant, valued the machinery and equipment at $50,000. This witness appeared to base his value on the cost of the machinery and equipment as shown by the company's books and his estimate, therefore, is of little value. There was no other evidence relative to the value of the machinery and equipment.
I have concluded the value of the said property was about $6,300 which would appear to make the distraint excessive. SeeLipinski v. Frank, 12 N.J. Mis. R. 174. The sale of all the machinery and equipment for about one-tenth of their value is at least a constructive fraud under an unconscionable distraint not only upon the tenant but also upon the creditors. The sale under the distraint will, therefore, be set aside. Since the Bloomfield Tool Corporation paid to the landlords the full amount of the rent due it may have a lien on the machinery and equipment for the amount so paid.
The second cause of action asks this court to set aside two chattel mortgages given to the Bloomfield Tool Corporation. It appears that the Film Company was indebted to the Bloomfield Tool Corporation in the sum of about $10,000 for materials and labor. The first mortgage was given on March 31st, 1938, and covered the goods and chattels in its plant in this state. The second chattel mortgage was given on April 14th, 1938, and covered machines which had been rented to parties in the State of New York. These chattel mortgages were made after the first distraint by the landlords but before the sale under the distraint. Complainant contends that both mortgages are void under R.S. 14:14-2
because they were given to secure an antecedent debt and that, at the time of the execution thereof, the mortgagor was insolvent which fact of insolvency was known to the mortgagee. The Film Company and the Bloomfield Tool Corporation occupied space in the same building. The officers of both companies dealt with each other frequently and the companies had mutual *Page 156 
interests. The Film Company needed the materials and services which the Bloomfield Tool Corporation supplied. The Bloomfield Tool Corporation extended a long line of credit to the Film Company and was naturally interested in its success. During this period the Film Company was short of capital and issued about $500,000 in bonds which were being marketed by a New York house. After about $100,000 of bonds had been sold to investors, the New York banking house closed and the Film Company became short of ready cash with which to continue its business. The Film Company had reason to believe that the balance of the bond issue would be absorbed by investors. There was a ready market for the product manufactured by the Film Company. It had many completed machines rented and was receiving rentals therefor. A large force of employees was not necessary to its business and owing to lack of operating capital only two employees and the president were engaged at the plant. A corporation may pledge its assets to raise money necessary to relieve its financial difficulty and permit it to continue business. It may obtain credit and renew its notes and obligations when temporarily financially embarrassed. The situation in this case is similar to that which existed in the case of Hersh v. Levinson Bros., Inc., 117 N.J. Eq. 131.
I have, therefore, concluded that the chattel mortgages are valid.
The third cause of action is against the defendant, Wallace 
Tiernan Products, Inc. Complainant contends that the defendant Wallace Tiernan Products, Inc., has not a valid assignment from the Film Company of weekly income from thirty splicing machines. Complainant says that the assignment is in the nature of a chattel mortgage and void because not properly executed and recorded, and for the further reason that the assignment was made at a time when the Film Company was insolvent, which fact of insolvency was known to Wallace Tiernan Products, Inc. I assume that complainant abandoned this cause of action for the reason that it was not argued by the solicitor of the receiver. The proofs in the case do not establish insolvency in 1935 when the assignment was originally made or in December, 1937, *Page 157 
when the terms of the original agreement were modified. In addition to this, the agreement appears to be an assignment and not in the nature of a chattel mortgage. Equity may enforce such an assignment against creditors or receivers. Cogan v. ConoverManufacturing Co., 69 N.J. Eq. 809, 814. The receiver will be directed to account to the defendant, Wallace Tiernan Products, Inc., for the fifty per cent. of the rentals collected and covered by said agreement. I understand the parties are in agreement as to the amount so due. If not, I will refer the matter of accounting to a master. The right of the defendant Wallace Tiernan Products, Inc., to said rentals is prior to any rights which the Bloomfield Tool Corporation has under its chattel mortgage except as to the income from the six or eight machines in use in Philadelphia.
I will advise a decree in accordance with these views.